[No. 350.   Decided February 26, 1892.]

## A. E. ISHAM, *Respondent,* v. HOLLON PARKER, *Appellant.*

ATTORNEY AND CLIENT—CONTRACT FOR SERVICES—CONSTRUCTION—COMPENSATION — BILL OF PARTICULARS — SUFFICIENCY — WAIVER OF OBJECTIONS TO — EVIDENCE — BURDEN OF PROOF — LIABILITY OF ATTORNEY.

The plaintiff, as an attorney at law, entered into a contract with defendant, providing among other things that he "agrees to prosecute and conduct according to his best skill and ability . . . the following suits commenced in the district court, and prosecute sa'd cases through the courts of the Territory of Washington and, if requi:ed so to do, to take said cases to the supreme court of the United States, and prepare briefs for the argument of said cases (naming them), and in consideration of such services the said Parker is to pay the said Isham the sum of $500 and all his necessary expenses in conducting said business, including traveling expenses and board and lodging while away from home on said business; and in case said cases, or either of them, are taken to the supreme court of the territory or United States by the opposing party, then said Isham is to prepare briefs in answer to the opposing party."

*Held,* That where the attorney filed and argued a petition for a re-hearing in the territorial supreme court of certain cases included in the contract, such services being regarded by the parties as outside of the services provided for in the written contract, and as preliminary to applications to the supreme court of the United

States for writs of *mandamus,* he is entitled to extra compensation therefor.

*Held,* That the applications for *mandamus* were unusual proceedings and not a taking of the cases to the United States supreme court within the meaning of the contract.

*Held,* That plaintiff is entitled to extra compensation for the clerical work necessary for preparation of an abstract of the testimony in one of the cases, made on the order of the territorial supreme court, as the contract did not bind plaintiff to perform such work.

*Held,* That plaintiff can recover his traveling expenses only from his place of residence while away from home on defendant's business, and not his traveling expenses from other points where he was upon other business when summoned to conduct defendant's cases in court.

In a second cause of action not included within the written contract, plaintiff, on demand, furnished defendant with an unverified bill of particulars, as follows: "May 14th to Aug. 1st, 1890, advised in all road matters, cash entry land cases, helped make briefs for Washington U. S. land dept., advanced money for telegraph and express, drawing' wills, and general work as his attorney, $2,000." *Held,* That under ⸹ 93, Code 1881, such bill of particulars is insufficient, against a good objection, to admit of proof of services during such period.

Where plaintiff makes a *bona fide* attempt to comply with defendant's demand for a bill of particulars, and defendant, on account of its insufficiency, makes a motion that he be required to file an additional itemized account, the defendant cannot object to proof thereunder on the ground that the statement is insufficient, after he has allowed his motion to lie dormant and has entered upon the trial without objection.

Where plaintiff has shown the character of services rendered by him as attorney and the time occupied in rendering them, the testimony of other attorneys is competent as to what such services were worth per year.

The fact that there is a contract between plaintiff and defendant as to the performance of certain services, does not repel the presumption that defendant has promised plaintiff to pay for other services rendered at defendant's request, although there may be no express promise to pay.

In an action by an attorney to recover pay for services rendered in certain cases, it is not error for the court to refuse to instruct that "the burden of proof is upon the attorney in all such cases to show the validity of contracts made and dealings had with his client."

The fact that additional counsel were employed in some of the cases with plaintiff's consent, and paid by defendant, does not deprive plaintiff from recovering what his services were reasonably worth in such cases, irrespective of the number of counsel engaged therein.

Upon an issue as to the negligent and careless management of the cases, there was no error in instructing the jury as follows: "An attorney at law, when he enters into the employ of another person, as such, undertakes that he possesses a reasonable amount of skill and knowledge as an attorney, and that he will exercise a reasonable amount of skill in the course of his employment, but he is not a guarantor of results and is not liable for the loss of such case, or cases, unless such loss occurred by reason of his failure to possess a reasonable amount of skill or knowledge, or by reason of his negligence or failure to exercise a reasonable amount of skill and knowledge as an attorney at law."

Stiles, J., dissents.

*Appeal from Superior Court, Walla Walla County.*

Action by A. E. Isham against Hollon Parker to recover for services as an attorney. Judgment for plaintiff, and defendant appeals.

*Mitchell, Tanner & Mitchell,* for appellant.
*Crowley & Sullivan,* for respondent.

The opinion of the court was delivered by

Scott, J.—The respondent, who was the plaintiff below, brought this action to recover the amount he claimed to be due him for certain services performed by him as an attorney at law for the appellant. There were three separate causes of action therefor pleaded in his complaint. The first one was founded upon a written contract, which is as follows:

"This agreement, made and entered into this 30th day of December, 1884, by and between Hollon Parker and A. E. Isham, witnesseth:

"That the said Isham hereby agrees to prosecute and conduct, according to his best skill and ability, and with

ordinary care and skill as an attorney at law for said Parker, or his legal representatives or assigns, the following suits, commenced in the district court of the first judicial district, at Walla Walla city, W. T., and prosecute said cases through the courts of the Territory of Washington, and if required so to do to take said cases to the supreme court of the United States, and prepare briefs for the argument of said cases, to wit: The cases of Timothy P. Denny *vs.* Hollon Parker, Hollon Parker *vs.* George Dacres, Hollon Parker *vs.* George Dacres, H. P. Isaacs, Alfred Thomas, J. C. Smith, Wm. Kirkman, John Lucas and James McAuliff, and, if required, to commence and conduct one as aforesaid against Dement Bros., wherein the property known as the R. J. Stringer property is in controversy; and in consideration of such services the said Parker is to pay the said Isham the sum of five hundred dollars ($500), and all his necessary expenses in conducting said business, including traveling expenses and board and lodging while away from home on said business; and in case said cases, or either of them, are taken to the supreme court of the territory or United States by the opposing party, then said Isham is to prepare briefs in answer to the opposing party, and the said Parker is to pay the said Isham the balance due on account rendered May 14, 1884; and said Isham is to prosecute in the aforesaid district court, if so required, for said Parker, Barney O. Donnald, James McCauliff, Dr. Clow, James O. Donnald, James Lamb and Demeris, in the matter of what is known as the land jumping cases of cash entries; and this agreement is intended as a full statement to date.

"Witness, J. F. Boyer.          A. E. Isham,
                                Hollon Parker."

The plaintiff alleged that he had fully complied with this contract on his part, and that his expenses as provided for therein amounted to $805, and that the balance on the account rendered May 14, 1884, was $254. In his second cause of action he sought to recover the sum of $2,000 for professional services performed by him for the defendant between June 1, 1884, and June 1, 1888, in other matters, not included in the written contract, such as

counseling and advising the defendant in relation to his property and business affairs generally, and in drawing contracts and other written instruments, including a will, for him. In his third cause he alleged the defendant was indebted to him in the sum of $1,695 for services in preparing a petition for a writ of *mandamus* for the supreme court of the United States, and a brief thereon in the case of *Denny v. Parker,* and for like services in the case of *Parker v. Dacres,* and for examining and collating and digesting the testimony in the case of *Denny v. Parker,* and for services in said cases in the supreme court of the Territory of Washington, over and in addition to the services performed under and by virtue of said contract in writing in the first cause of action pleaded. He alleged the defendant has not paid such sums of money, or any part thereof, except the sum of $1,083 paid from time to time, leaving due and unpaid the sum of $4,171. The defendant denied the performance of the contract, and denied that said expense account exceeded $250, and he also denied that there was any balance then remaining unpaid upon the said account rendered May 14, 1884, and he denied all the other matters alleged in the complaint, and alleged that whatever services were performed by the plaintiff were performed under the written contract aforesaid, and that he had paid for the same, and the whole thereof. He then set up a counter claim for damages in the sum of $14,200 resulting from the loss of a suit which he claimed was due to the plaintiff's negligence, and he further pleaded that the plaintiff was indebted to him on certain notes. The plaintiff replied denying these affirmative matters alleged in the answer. A jury trial was had which resulted in a judgment for the plaintiff for the sum of $3,187.76 and costs, and the defendant appealed.

The history of the cases described in the contract is contained in the decisions of the supreme court of the Territory

and State of Washington, and of the supreme court of the United States, which were introduced in evidence. At the time of the making of the contract set out in the complaint, the case of *Denny v. Parker* had already been argued and submitted in the supreme court of the Territory of Washington. A change in the court called for a re-submission, and, at the July term, 1885, on motion of Denny, appellee, the case was dismissed (2 Wash. T. 360; 7 Pac. Rep. 892). A petition for a re-hearing was filed and denied, whereupon a petition for a writ of *mandamus* was filed in the supreme court of the United States and on March 21, 1887, the writ was issued, directing the supreme court of the territory to proceed to hear and determine the appeal upon the merits (*ex parte Parker*, 120 U. S. 737; 7 Sup. Ct. Rep. 767). Under this order of the supreme court the case was argued, submitted and decided, and the decision is to be found in 3 Wash. T. 598 (21 Pac. Rep. 386). From this decision an appeal was taken to the supreme court of the United States. After briefs had been prepared, and the case argued and submitted, the supreme court of the territory made an order requiring a brief and transcript of those portions of the testimony relied upon by the respective parties to be made and printed. The respondent was not allowed to recover extra compensation for any services rendered therein except those relating to the petition for a re-hearing, and the application in the United States supreme court for the writ of *mandamus,* and for preparing the brief and transcript of testimony under the order of the territorial court. The case of *Parker v. Dacres et al.* was decided by the supreme court of the territory on the merits (see 2 Wash. T. 439; 7 Pac. Rep. 893), appealed to the supreme court of the United States, and there decided on March 5, 1889 (see 130 U. S. 43; 9 Sup. Ct. Rep. 433). No additional charges are made in this case. The case of *Parker v. Dacres,* was, on motion, dismissed from the supreme

court of the territory at the July term, 1884 (see 2 Wash. T. 362; 7 Pac. Rep. 862). A petition for re-hearing was filed and denied, whereupon a petition for a writ of *mandamus* was filed in the supreme court of the United States, and on March 13, 1889, the said court directed the supreme court of the territory to proceed and hear the said cause on the merits (see *Hol'on Parker, Petitioner,* 131 U. S. 221; 9 Sup. Ct. Rep. 708); and afterwards, on March 7, 1890, the supreme court of the state decided the said appeal on the merits (see 1 Wash. 190; 24 Pac. Rep. 192). No recovery for extra compensation was had in this case, except in relation to the petition for a re-hearing and the application for the writ of *mandamus*. For the other cases, mentioned in said contract, no claim is made outside the contract price.

The court, over the objections of the defendant, allowed the plaintiff to show the value of the services rendered by him in preparing the petition for a re-hearing in the supreme court of the Territory of Washington in the case of *Denny v. Parker,* and for clerical work in collating and digesting the testimony in said case; also as to the value of his services in preparing the petition for a re-hearing in the case of *Parker v. Dacres,* and for services in preparing the petitions for writs of *mandamus* in said cases, and preparing briefs thereon in the supreme court of the United States. In this the defendant claims the court erred. He claims all of said services were required of the plaintiff under his written contract aforesaid; that the contract does not provide in what manner, or for what purpose he was to take said cases, or any of them, to the supreme court of the United States, but that he agreed in consideration of the $500 to take said cases there if required, and prepare briefs for their argument; that those cases were taken to the supreme court on petitions for writs of *mandamus*, instead of by appeal or writ of error, could not make any difference so far as the plaintiff's right to compensation was concerned, and in doing

that work he did simply what he had agreed to do in his contract, and was not entitled to receive any additional compensation therefor; that he also agreed in the written contract to prosecute the case of *Denny v. Parker* to the supreme court of the Territory of Washington and prepare briefs for the argument thereof, and that whatever services he performed in that case were done under and came within what was required of him by the contract, and that the terms of the contract would require him, if he supposed in the exercise of reasonable care and diligence as an attorney that he should prepare and file petitions for a re-hearing in any of said cases in the supreme court of the Territory of Washington, to do so, and that he was not entitled to any additional compensation therefor.

The respondent contends that these services were not provided for in the written contract, and were not within the contemplation of the parties when said contract was entered into; that it only provided for such services as were usual and ordinary in character, and that the services for which the respondent was allowed to recover outside of the contract in the cases specified were additional services of an unusual and extraordinary character. He contends that the construction given by the court to the written contract was more favorable to the appellant than it should have been, as at the time of making the contract the case of *Denny v. Parker* had been argued and submitted, and it must be presumed that it was contemplated by the parties that the services required by the contract had been rendered, except such as might be necessary to take said case to the supreme court of the United States, if required so to do, and that under the construction given by the court below the respondent was required to render services in the supreme court of the territory in this case, and also in *Parker v. Dacres*, after said cases had been dismissed from such court. Respondent insists that upon such dismissal

the cases had been taken through the courts of the Terri-
tory of Washington. But after they were reinstated by
order of the supreme court of the United States, under
the *mandamus* proceedings, he again argued and sub-
mitted them for final determination, for which he was
not allowed to recover. He claims that the petitions for
re-hearing are not within the contract, and will not be
implied because it is an unusual proceeding, made after a
final determination, and after the case has been once
through the court; and also that the services rendered
in digesting and briefing the testimony in the case of
*Denny v. Parker* were rendered under an order of the
supreme court, which was outside of the usual require-
ments relating to cases on appeal, and were rendered after
the case had once been dismissed from the supreme court,
and had been reinstated under the direction of the su-
preme court of the United States; that it cannot be suc-
cessfully contended that the services rendered in securing
writs of *mandamus* are covered by the terms of the con-
tract in question; that the writ of *mandamus* was formerly
a high prerogative writ, and is issued in the name of the
people by the supreme court, directed to some court of
inferior jurisdiction, requiring the doing of some particu-
lar thing therein specified, and is not a method of appeal,
and cannot be resorted to in cases where an appeal or writ
of error will lie; that the effect of an application for a
writ of *mandamus* is not to take the case from a lower
court to the court of superior jurisdiction, and in fact and
law the case remains in the lower court, but the order is
made directing the subordinate court to proceed and act;
that under the contract the respondent could be required
to take these cases to the supreme court of the United
States by appeal or writ of error, and to prepare briefs,
but that it cannot be contended he could be required to
make an application for a writ of *mandamus*.

'764 .    ISHAM v. PARKER.

Opinion of the Court—Scott, J.    [3 Wash.

"It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." *Merriam v. United States,* 107 U. S. 441 (2 Sup. Ct. Rep. 536).

"Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject matter and the standpoint of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities." *Reed v. Insurance Co.,* 95 U. S. 23; *Maryland v. Railroad Co.,* 22 Wall. 111; *Hildebrand v. Fog'e,* 20 Ohio, 147.

"In cases where the language used by the parties to the contract is indefinite or ambiguous, and, hence, of doubtful construction, the practical interpretation of the parties themselves is entitled to great, if not controlling, influence. The interest of each, generally, leads him to a construction most favorable to himself, and when the difference has become serious, and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur there can be no great danger in the adoption of it by the court as the true one." *Chicago v. Sheldon,* 9 Wall. 50.

This contract should receive a reasonable construction with an aim to get at the true intent of the parties in entering into it, as expressed by its language, of course, but

also as applied to the subject-matter and the then existing situation. That there was no attempt therein, on the part of Isham, to drive a sharp bargain or to overreach Parker, is apparent. There is nothing in the language employed, and there was nothing in the situation, to indicate a design upon the part of Isham to cunningly word the contract so that there would be room for him to recover additional compensation for services in those cases. Nor is there anything to indicate that it was intended to cover absolutely and under all manner of contingencies whatever services should be rendered necessary therein. It is evident that the parties only had in view the usual services ordinarily rendered in such cases. Neither thought of anything else or supposed for a moment that any other character of services would be required in the conduct of said cases beyond what was usual and ordinary. The ordinary service to be rendered in the prosecution and defense of the cases specified to carry them through the territorial courts, and to prosecute or defend an appeal therein in the supreme court of the United States if required so to do, was not a matter of speculation at all, but was well defined by the practice and understood. Now, upon what principle of justice should the court import anything else into the contract? Why should the fact that unusual difficulties presented themselves to be overcome in the prosecution of such cases requiring the work to be more than twice done over, and that an exceptionally arduous and devious course was allotted to them in their lifetime, be Isham's misfortune instead of Parker's, unless the same was due to Isham's fault? It was the client's interests which were at stake, and the benefits to be derived from a successful termination would belong to him. The right of the parties to contract with each other in the premises of course is not questioned, and the attorney had done nothing for which he deserved punishment. His professional conduct of the cases, as far

as matters of practice were concerned, was vindicated by
the highest court in the land.  Because the cases went
against his client ultimately upon the law and the facts
would make no difference as to his right to recover pay
for his services, for he was not an insurer of results; he
was only bound to bring a reasonable degree of skill and
diligence to their prosecution.  There is nothing to show
that the client was in any wise misled in entering into
this contract, or that his attorney in any way subsequently
led him to believe that the services in question were pro-
vided for in the contract.

While under ordinary circumstances the contract in ques-
tion would have covered all the services necessary to be
rendered by an attorney in the prosecution and defense of
those cases, yet under the peculiar difficulties in which they
became involved, and the circumstances surrounding the
dealings between the parties to this action with reference
to said business, as shown by the testimony, it is evident
that there is no principle of justice or question of public
policy calling upon the court to say as a matter of law that
all of the services so rendered should be held to be within
the services required by the written contract, that it in-
cluded services very unusual in character although subse-
quently rendered necessary by unlooked for contingencies
as well as those of a common and ordinary nature.  The
jealous regard that the law rightfully exercises in protect-
ing the interests of the client in his dealings with his at-
torney should not be allowed to operate so far as to work a
rank injustice to the attorney in matters where it is ap-
parent there could have been no possible design on the
attorney's part to overreach his client in entering into the
contract.  That the cases had such a hard road to travel
was the client's misfortune, and we are of the opinion that
the attorney could not have been compelled to argue them
a second time in the supreme court of the territory without

additional compensation; and the same is true with regard
to the petitions for re-hearing. If, however, such work
should be rendered necessary by some wrong or fault upon
the part of the attorney, the rule would be different, and
he might be liable for the damage resulting to his client
as well, but not where the same is occasioned by something
which the court had overlooked, or upon the court's mis-
take. We think, however, the law goes this far, that where
a contract like the one here exists between the attorney
and client, if the attorney should prepare and file a peti-
tion for a re-hearing, or should re-argue the cases, or per-
form any other unusual professional services therein, where
there was no further understanding or request, and where
there was nothing to show that it was understood by the
client that such services were outside of or in addition to
the services provided for by the contract of employment,
the attorney should be precluded from recovering any-
thing in excess of the contract price. But in this case
there was testimony introduced which, if true, was com-
petent to show that the petitions filed for a re-hearing in
the cases of *Denny v. Parker* and *Parker v. Dacres*, upon
their dismissal by the territorial supreme court, were
only filed preliminary to and as a necessary step to allow
a sufficient showing to be made in the proceedings to ob-
tain the writs of *mandamus*. That if it had been deter-
mined not to apply for these writs, the re-hearing would
not have been asked for in either of these cases. That
these petitions, as well as the applications for said writs,
were regarded by Parker as well as by Isham as outside
of the services provided for in the written contract.
Neither Parker nor Isham seemed to have any confi-
dence in their being able to make a sufficient showing, or
one which the territorial court would deem sufficient, to
warrant the setting aside of the judgments of dismissal,
and allowing the cases to be again submitted on the merits.
But it was considered necessary to make the application as

a basis upon which to apply for the writs of *mandamus*, in order that there might be no doubt as to their having first completely exhausted their remedy in the lower court, and that so far as it related to the territorial court it was more a matter of form than one from which they expected substantial benefit, and that Parker, understanding the situation of the cases, specially requested Isham to prepare and file these petitions, and to apply for the writs of *mandamus*. The testimony was properly admitted.

The respondent is right in his contention as to the applications for the writs of *mandamus*. This was not a taking of the cases to the United States supreme court within the meaning of the contract. It was an unusual proceeding, and was resorted to, as respondent contends, to compel the territorial court to proceed to a hearing and disposition of the cases upon the merits, and was in no wise provided for in the contract or within the contemplation of the parties. The same is true with regard to the preparation of the digest or abstract of the testimony in the case of *Denny v. Parker*. This was a very unusual order, rendered necessary by the exceeding length of the testimony, and was, in fact, made after the case had been argued and submitted. It appears that the court would not allow respondent to recover anything for the professional work in selecting the testimony deemed material, or in digesting it, but only for the clerical work in preparing it or reducing it to writing. The written contract did not bind the respondent to perform such work as this, which was purely clerical. Had he hired a clerk to do this writing, and the respondent simply selected and dictated that which was to be written, certainly appellant would have been chargeable with the expense of the work performed by the clerk. The appellant can found no error on the premises.

Another ground of error alleged arises upon the second cause of action, and is as follows: The plaintiff was asked

by his attorney whether he performed other services for the defendant by way of counsel or otherwise. This question was objected to by counsel for defendant, on the ground that there was no itemized account furnished, as required by the statute and demanded by defendant, there being an itemized account filed, but not verified or furnished to defendant as required by the statute, and containing no sufficient statement of items as to said cause of action to which said question related. Counsel for plaintiff then asked permission to file an affidavit of Mr. Isham's, explaining the reason why this account was in the shape it was, which permission was granted by the court; whereupon an affidavit was filed, upon which leave of the court was asked to verify the account, which was granted; all of which was excepted to by defendant. Section 93 of the Code of 1881 was the statute referred to, and it is as follows:

"SEC. 93. It shall not be necessary for a party to set forth in a pleading a copy of the instrument of writing, or the items of an account therein alleged; but unless he file a verified copy thereof with such pleadings, and serve the same on the adverse party, he shall, within ten days after a demand thereof in writing, deliver to the adverse party a copy of such instrument of writing, or the items of an account, verified by his own oath, or that of his agent or attorney, to the effect that he believes it to be true, or be precluded from giving evidence thereof. The court, or judge thereof, may order a further account when the one delivered is defective; and the court may, in all cases, order a bill of particulars of the claim of either party to be furnished."

In relation to the demand for a bill of particulars, the following are the facts: Demand was made upon plaintiff, and a bill of particulars was furnished to the defendant; but, by mistake, the signature to the verification was omitted. Afterwards, but two months before the trial, the defendant filed a motion in the superior court, asking that the itemized account be made more definite and certain, but

49—3 Wash.

did not call said motion up for hearing prior to the commencement of the trial of said action; it was taken up at the time referred to during the progress of the trial. The affidavit then filed showed that a portion of the plaintiff's books which contained the itemized statement of the account had been lost at Portland, Oregon, and the balance destroyed at the Seattle fire, and that he was unable to furnish the itemized account; and thereupon the court overruled and denied the motion of the defendant for a further itemized statement. The clause in the bill of particulars relating to this cause of action reads as follows:

"May 14th to August 1, 1890. Advised in all road matters, cash entry land cases, helped make briefs for Washington U. S. Land Dept.; advanced money for telegraph and express, drawing wills and general work as his attorney, $2,000."

The May 14th referred to was of the year 1884. It was mentioned elsewhere in the bill of items with the year stated, and also in the contract. The defendant seems to have understood it to mean May 14, 1884, as he made no special point over the omission of the year in the clause, and no May 14th of any other year was anywhere given. The plaintiff testified he did not have the contract when he made out the account, and he had forgotten its date; that he had supposed it was of an earlier date. He admitted on cross-examination that he could not recover for any work under this cause of action done prior to December 30, 1884, the date of the contract, and the court instructed the jury that he could not recover for it. No point is made that he was allowed to prove the rendering of any such services after June 1, 1888, the time alleged in the complaint. The plaintiff testified he had acted as Parker's attorney generally, in all of his business since said time; that some of it was in relation to road matters; that Parker owned a good deal of land and was interested in a good

many roads, either in getting them established or in opposing the same, or in getting a change of location. That he was a contentious man and had many difficulties with various people in his dealings. A good deal of testimony was given by the plaintiff as to the character and amount of the services rendered by the plaintiff for the defendant, such services being in the way of counsel, appearing before the United States land office, and the board of county commissioners, in matters in which Parker was either prosecuting or defending, and drawing various legal documents for him. The plaintiff could not give any of the dates other than the years, and the seasons of the years, in some instances. He testified that the defendant was in his office on such business almost daily, and often three or four times a day; that it occupied a good portion of his time; that he also kept a clerk, and that the defendant monopolized a good portion of his clerk's time. He testified that his said services, for which he sought to recover in his second cause of action, were worth at least five hundred dollars a year. A number of other witnesses were called who corroborated the plaintiff in his testimony as to the character and amount of such work performed for the defendant. Several attorneys were called who testified that they heard the testimony regarding such services, and that said services were worth $500 or more per year. All of this testimony was objected to by the defendant on the grounds that it was incompetent and immaterial, and because the plaintiff had failed to comply with the statute in regard to furnishing an itemized account. The appellant contends that the said section of the code is distinct in its provisions; that unless an itemized account be furnished, the party shall be precluded from giving evidence thereof; that no authority is given the court to excuse the party from furnishing an itemized account, and that the effect of the statute is to preclude the party from giving evidence in support of the cause

of action unless he has furnished the items of the account when required by the adverse party; that the only authority the court has is to order a further account when the one delivered is defective; that the court in this case had the power to order a further account, not only by requiring the plaintiff to verify it, but also to give fully the items thereof; but he insists that, under the section of the statute referred to, the court had no right or authority to excuse the plaintiff upon any kind of a showing he might make from furnishing items of the account upon which this cause of action was based. He further insists that the court erred in admitting the evidence in support of the said second cause of action, and particularly that part of it relating to counseling and advising defendant, for the reason that, where an attorney is performing service for a client under a contract in certain business such as plaintiff was performing for defendant in this case, that the attorney is not entitled to charge for consultation and advice unless he is able to show that the defendant expressly promised to pay therefor, or that some special agreement was made which would entitle the attorney to charge for such consultation and advice. The respondent contends that appellant is not in a position to avail himself of the objection that the itemized account was not verified, as what purported to be a verified copy of the account was served upon him, as is shown by the record, within the time required by law, and no objection was made because of the lack of verification. His motion was only to require the plaintiff to file an additional itemized account; and, in response to this motion, the plaintiff made the showing of facts by affidavit to the effect as aforesaid, whereupon the court denied the motion. He contends that the section of the code aforesaid is directory only, and as it was impossible for the plaintiff to furnish an itemized account, it would be unreasonable to contend that under such circumstances he would be precluded from

giving evidence regarding his account.    The bill of items
was insufficient, against a good objection, to admit of the
proof which was offered.    It is true that the court has a
reasonable discretion in the premises.    See *Ferry v. King
Co.*, 2 Wash. 337 (26 Pac. Rep. 537).    And it was so held
under a very similar statute by the supreme court of Colo-
rado.    *Robbins v. Butler*, 13 Col. 496 (22 Pac. Rep. 803).
But the plaintiff could have furnished a more specific
statement than the one he did provide.    Upon his cross-
examination he was able to give the names of opposing
parties in a number of instances with whom his client had
legal controversies, wherein the plaintiff was called upon to
act, which were not included in the written contract and
came within the second cause of action pleaded.    He could
tell of various matters wherein he had given professional
advice to the defendant, and was able to give a more par-
ticular description of the business generally, and he should
have furnished as specific a statement of such matters in
his bill of particulars as he could have furnished under the
circumstances.    Because the plaintiff could not give the
items with the particularity which good practice and a due
regard for the rights of the defendant would require where
the same can be given, would not excuse him from giving
the best statement he was able to give.    The defendant was
entitled in the bill of particulars to have all the information
the plaintiff could furnish him with.    After such a state-
ment is furnished, where without the fault of the plaintiff
he should be unable to give a more specific one, he should
not be precluded from testifying.    The fact that the plain-
tiff here could not give the date of each item, or give specif-
ically the particulars of each transaction, would only go
to the weight of the proof according to the bearing it might
have thereon in the minds of the jury.    This was the plain-
tiff's misfortune, coming, as he says, from the loss of his

books of account, but it only went to the weight of his testimony, and not to his competency.

But the defendant's objection to the bill of items, and the testimony thereunder made at the trial, came too late. Although the plaintiff did not give as particular a description in his bill of items of his claims under the second cause of action as his subsequent testimony showed he could have given, and while we would not have held the same sufficient against a proper demand for a more particular statement, yet, as there was apparently a *bona fide* attempt made to comply with the defendant's demand for an itemized statement by filing the purported bill of particulars, which did give a general statement of the character of these claims, stating the amount demanded thereon; if the defendant was not satisfied therewith, he should have seasonably moved against it. The bare filing of the motion was not sufficient. He could not allow it to lie dormant as if abandoned, and enter upon the trial without objection, and then object to the proof on the grounds that the statement was insufficient. He was the moving party, and it was incumbent on him, under the circumstances of this case, to see that some action was duly taken in the premises. See *Dennison v. Smith*, 1 Cal. 437; *Providence Tool Co. v. Prader*, 32 Cal. 634; 91 Am. Dec. 598; *Conner v. Hutchinson*, 17 Cal. 279.

It is claimed that the proof of the value of these services, as given by the other attorneys, who were witnesses, and testified as to what the rendering of such services as testified to by the plaintiff, were worth per year, was incompetent; that the plaintiff could only recover the value of each specific item which he could prove, and that no proof of a general value in this way was permissible. This objection is not well taken. A proper foundation had been laid for such proof of value by testimony going to show the character of such services and the time occupied in rendering the same. Our attention was called to the case,

of *Yates v. Shepards m*, 27 Wis. 238, but the facts of that case were different from the facts here. It appears by the original opinion in that case, and the opinion rendered upon the motion for a re-hearing, that the plaintiff there sought to recover $1,000 a year as a general retainer, or counsel fee, in addition to the services rendered by him during said time, which he specified in his bill of particulars and was allowed to prove and recover for; that he made no charge for such services at the time they were rendered. At page 245, the court says:

"He did not offer to show the amount of professional advice given, or what were the specific services rendered aside from those included in his bill of particulars, so that the defendant could meet the claim by proof as to what they were reasonably worth."

Stress was laid upon the fact that the plaintiff there had made no charge for the services for which he claimed the $1,000 a year during the years in which they were rendered, while he did make charges for his other services, and was able to give the items thereof. Here it appears by the plaintiff's testimony that he charged for all the services for which he sought to recover in the second cause of action at the time they were rendered, and in his affidavit, made to show his inability to give the items thereof in his bill of particulars, which is contained in the record, he says that his books of account, which were lost and burned, contained a full itemized account of all of said business. The plaintiff's case as made, and the admission of the proof referred to, as to yearly value in particular, is directly sustained by *Hughes j. Dundee Mortgage, etc., Co.*, 21 Fed. Rep. 169. The plaintiff's testimony here makes a stronger case than the one there proved, and both parties relied upon the authority of the case cited.

As to the objection that there was no express promise to pay for these services, there was testimony to show they

were rendered by the plaintiff for the defendant at the defendant's request. The defendant denied that they were performed, and he denied nearly all other statements made by the plaintiff. This conflict of testimony was passed upon by the jury, who found in favor of the plaintiff. It is a universal rule that the law creates a promise to pay for work procured to be done by or services rendered at the request of another, unless the circumstances of the transaction repel this presumption and show that it was intended the services were to be rendered gratuitously. It is not necessary that there should be an affirmative promise to pay on the part of the person for whom the services were rendered. It is sufficient that he makes a request for such services and they are rendered to him in accordance with such request. Nor does the fact that there was a special contract between the parties as to other services render the proof incompetent or preclude the plaintiff of his right to recover for services performed not included therein. There can be no difference as to the implied presumption whether the services are rendered by an attorney or by any other individual. So far as the law is concerned, there would be as much reason in holding that a carpenter who had contracted with a party to build him a barn, for an agreed price, and who should also continue his work and build a house without any agreement as to the pay or price, would be precluded from recovering anything for the work on the house. See *McCrary v. Ruddick*, 33 Iowa, 521; *Scully v. Scully*, 28 Iowa, 548; *Henderson Bridge Co. v. McGrath*, 134 U. S. 260 (10 Sup. Ct. Rep. 730); *Day v. Caton*, 119 Mass. 513 (20 Am. Rep. 347; *Cadman v. Marble*, 76 Mich. 448 (43 N. W. Rep. 315); *Hughes v. Dundee Mortgage, etc., Co.*, 21 Fed. Rep. 169.

The appellant alleges that the court erred in refusing to give a number of instructions submitted by him. Some

of these served only to renew questions raised by objections during the trial, which have been discussed, and these will be passed. One request submitted by appellant is as follows:

"Where the relation of attorney and client exists between the parties, their dealings with each other are to be closely scrutinized to protect the client from rapacious or unfair bargains. This jealous care and scrutiny over transactions between attorney and client extends to all gifts, conveyances and contracts and all securities given by him pending the relation (and the burden of proof is upon the attorney in all such cases to show the validity and fairness of contracts made and dealings had with his client). In this case it is admitted that the relation of attorney and client existed between the plaintiff and defendant from some time prior to May 14, 1884, to about the time of the commencement of this action, and the principles of law above stated apply to this case."

Which instruction the court refused to give, but modified the same by striking out the words "and the burden of proof is upon the attorney in all such cases to show the validity and fairness of contracts made and dealings had with his client," and gave the same as modified, to which refusal and the modification thereof counsel for defendant excepted. There was no error in the refusal to give the instruction as requested, and none certainly to the prejudice of appellant in giving it as modified. It was only applicable to that class of cases where the attorney, by virtue of the relationship, has acquired from his client conveyances, property, securities, etc., and not to an action like this where he is simply undertaking to recover pay for his services. The court instructed the jury that the burden of proof was upon the plaintiff to show the rendition of the services, the request therefor, and what the same were reasonably worth. These questions were fully and fairly submitted. Other attorneys had been employed by Parker in

some of these cases, and he requested the court to charge
that—

"If the defendant, with the knowledge and consent of
the plaintiff, employed other attorneys to bring said *man-
damus* cases, and who did the work therein, and were paid
therefor by defendant, then plaintiff cannot recover any-
thing in said cases."

Which instruction the court refused to give, but gave
the same in a modified form as follows:

"If the defendant, with the knowledge and consent of
the plaintiff, employed other attorneys to bring said *man--
damus* cases, who did all the work therein, and were paid
therefor by defendant, then plaintiff cannot recover any-
thing for said services; but if defendant employed Isham
and other attorneys to do this, the employment of other
attorneys would not necessarily diminish the amount he
should pay Isham."

There was no error herein. The instruction given by
the court is so evidently correct as to need no argument in
its support. Defendant had a right to employ as many
attorneys as he saw fit, but the employment of additional
counsel had nothing to do with the compensation to be
paid to plaintiff, in the absence of a special agreement to
that effect. He was entitled to be paid what his services
were reasonably worth, irrespective of the number of coun-
sel engaged in the case.

The appellant contends that the court erred in instruct-
ing the jury in relation to the negligent and careless man-
agement of the cases. The court instructed the jury as
follows:

"An attorney at law, when he enters into the employ of
another person as such, undertakes that he possesses a
reasonable amount of skill and knowledge as an attorney,
and that he will exercise a reasonable amount of skill in
the course of his employment, but he is not a guarantor of
results and is not liable for the loss of such case or cases,
unless such loss occurred by reason of his failure to possess

a reasonable amount of skill or knowledge, or by reason of his negligence or failure to exercise a reasonable amount of skill and knowledge as an attorney at law."

To the giving of which the defendant excepted. This instruction fairly presented the law generally upon this subject, and the defendant cannot complain. It is questionable whether the plaintiff was not, as a matter of law, under the circumstances of this case, entitled to have the jury instructed that he was not negligent. Twice the supreme court of the United States decided that the appeals had been improperly dismissed by the supreme court of the territory, and that the cases should have been heard upon their merits. In the case of *Parker v. Dacres et al.,* the supreme court of the territory (2 Wash. T. 439; 7 Pac. Rep. 893) expressly decided that the appellant never had a cause of action, for the reason that under the statutes as they then existed he had no right of redemption. The supreme court of the United States, in affirming the judgment, discussed this question, and did not formally affirm it or set it aside, but placed its affirmance upon the other ground that the appellant had lost his right to redeem, if he had any after the sale, by his failure to proceed in time, but it affirmed the judgment (130 U. S. 43; 9 Sup. Ct. Rep. 433). It seems that this state of facts would prevent the appellant from asserting any negligence on the part of the respondent at least which resulted in loss to the appellant. It was not negligence to bring the action, for as to whether the right to redeem existed was a question over which attorneys might well differ.

"Reasonable diligence and skill constitute the measure of an attorney's engagement with his client. He is liable only for gross negligence or gross ignorance in the performance of his professional duties; and this is a question of fact to be determined by the jury, and is sometimes to be ascertained by the evidence of those who are conversant with and skilled in the same kind of business.   .   .   .

In the very nature of things, a charge of this nature, if well founded, must seriously affect the professional character of the attorney, (and) he is entitled, to the fullest extent, to the benefit of that rule of universal application, extending through all the relations of society, that every one shall be presumed to have discharged his legal and moral obligations until the contrary shall be made to appear; and, when made to appear, the extent of the damages that have resulted must be affirmatively shown. *Pennington's Executors v. Yell*, 11 Ark. 212 (52 Am. Dec. 262); *Wilson v. Russ*, 20 Me. 421; *Marsh v. Whitmore*, 21 Wall. 178; *Hastings v. Halleck*, 13 Cal. 203; *Harter v. Morris*, 18 Ohio St. 493; *Morrill v. Graham*, 27 Tex. 646; *Babbitt v. Bumpus*, 73 Mich. 331 (16 Am. St. Rep. 585); *Morgan v. Giddings* (Tex., June 18, 1886), 1 S. W. Rep. 369.

A further question remains which, owing to its peculiar situation, was not taken up in its regular order. Appellant claims the court erred in permitting the plaintiff to testify to traveling expenses incurred by him in going from Wardner to Olympia, on one of the trips he made. He claims that under the contract the plaintiff could only recover in this instance what would be the amount of his expenses from Walla Walla to Olympia, that being the place where he resided when the written contract was entered into. The expenses from Wardner were somewhat greater than they would have been from Walla Walla. It seems the plaintiff had gone to Wardner temporarily on other business, and while there appellant telegraphed him directing him to go to Olympia to attend to these cases in the supreme court, and the plaintiff went there, and when he left he was obliged to return to Wardner to complete the business on which he was engaged when called away. A majority only of the members of this court hold this point to be well taken; that the residence of the attorney might well be considered by the client in making a contract of this kind, where the traveling expenses of the attorney were to be paid by the client, as the point beyond which

no greater expenses should be charged. That while in this case it might make no difference, in some instances it might be the greater part of the expense, and that in any event it is an expense incurred by the attorney in the pursuit of his own private business with which the client had no concern and ought not to be called upon to pay. I think the proof was properly admitted. It seems to me these expenses were necessarily incurred, and were incurred wholly in the performance of appellant's business, and were not unusual in character, nor of such a nature that the court would be justified in saying as a matter of law that they were not within the contemplation of the parties in making the contract. Such expenses, of course, should in the absence of circumstances requiring a different holding be limited to a point in the vicinity of the place where the plaintiff resided when the contract was made, no particular place being specified therein. It is a well known fact that a lawyer's business usually extends over other places in the vicinity of the place where he resides, and that his professional duties frequently call him to such other points, and especially was this true in territorial days when the country was not so thickly populated, and lawyers were fewer in number. The town of Wardner was not so far distant from Walla Walla as to be said to be outside of the range of territory where a lawyer residing at Walla Walla would likely be called to visit occasionally in his practice. If it had been so remote as to have rendered such a call unlikely and exceptional, a different rule might obtain. But I do not think it is clear, even in such a case, that the rule would be different where the plaintiff was specially called upon by the appellant to proceed from that place to another town, and where he went directly there and was compelled to return straightway to the place he was so called upon to leave, as was the case here. I might also say that these views are enter-

tained by another member of this court. It is uncertain whether the extra expense of this trip from Wardner was $25 or $80, from the proof, but as the larger amount even is inconsiderable when compared with the amount involved in the action, and as none of the other errors alleged by the appellant are well founded, we do not now reverse the case, but allow the respondent the option of having the judgment affirmed upon his remitting the sum of $80 therefrom.

It is ordered that if the respondent within thirty days from this time file his consent in writing remitting said sum of $80, the judgment shall stand affirmed, but without costs of this appeal to either party. Otherwise the judgment will be reversed.

ANDERS, C. J., and DUNBAR and HOYT, JJ., concur.

STILES, J. (*dissenting*).—I feel that I must dissent from the conclusion reached by the court in this case, and vote in favor of an absolute reversal, upon a ground very strenuously urged by the appellant, but, I think, not made clear and fairly met in the foregoing opinion. The second cause of action was as follows:

"That on the first day of June, 1888, at Walla Walla county, defendant was justly indebted to plaintiff in the sum of $2,000, for professional services rendered said defendant at his request, by plaintiff, as an attorney and counselor at law, between June 1, 1884, and June 1, 1888 in counseling and advising said defendant in relation to his property and business affairs, and for drawing papers and contracts for said defendant, and drawing said defendant's will, *which said services were rendered upon an open, mutual and current account* and were reasonably worth the sum of $2,000."

Now, I submit that from this allegation the defendant had a right to suppose that when the case came to trial the plaintiff would produce some *account*, or memorandum

showing the various items of service, and a charge made therefor, or that at least he would testify to the value of each item of service. But when called upon to furnish a bill of particulars of this cause of action, this was all that was vouchsafed:

"May 14th to Aug. 1, 1890. Advised in all road matters. Cash entry land cases; helped make briefs for Washington U. S. land department; advanced money for telegraph and express; drawing wills, and general work as his attorney; $2,000."

I concur, that the appellant lost his right to have this item in the bill of particulars made more specific by not moving therefor; but that did not relieve the respondent from the burden of proving his case as laid. Therefore, when upon the trial he offered nothing but a general statement that all his books of account, in which he had kept his accounts with Parker, had been lost or destroyed by fire, and then went on to give a rambling story of his connection with Parker's business, running through four years, without particularizing a single item of service, or showing that any item had even been set down in his books, or any charge made, or any account stated to Parker or demand made for settlement, or the value of any single service, I hold that the cause of action was not proven, and that it should have been withdrawn from the jury. All that the respondent would say was that his services shown in this way were well worth $500 a year for the four years, or $2,000 in all, and not until his cross-examination on his rebuttal did he attempt to fix the value of a single service, when he stated that a certain will which he had drawn was worth $100. He would not and did not say that he had ever charged up items to the amount of $2,000 in any book. I submit that such testimony was not sufficient to support the action as brought. I make no question of respondent's right to be paid for the services performed, but

before he can lay out of view the general rule that personal services are to be paid according to the value of each service, and recover upon an annual retainer, he must lay some foundation for it. That would be the case were his pleadings different. This is clearly shown in *Hughes v. Dundee Mortgage, etc., Co.*, 21 Fed. Rep. 169, where there was a written retainer under which the attorney was "generally to give his best attention to all the matters connected with the legal department of the company's business, and to give such information and advice as may from time to time be requested or occur to him." Hughes was the general attorney and counselor of the defendant corporation, and sued for his services on *quantum meruit*, as plaintiff in this case does. But because he had kept no account and could furnish no testimony showing of what his services consisted, or their value, the court refused to find for him on that basis at all, but it did find that the nature of his contract was that of an annual retainer, and allowed him accordingly. The contrast between that case and this one is most marked, when we see in this case that there had been an account which was lost or burned, but about which, or any item in which, no testimony was offered. There was not a particle of evidence in the case going to show that either plaintiff or defendant ever contemplated that there should be such a thing between them as a contract for an annual retainer, and I see no reason why the court should raise one for them.

For the same reasons the questions put to attorneys who heard plaintiff's relation of the general nature of his services, as to what, in their opinion, was the yearly value of those services, were irrelevant and incompetent. As answered they were mere guesses, based rather upon the amount of annoyance endured by the attorney through certain disagreeable personal characteristics of his client than upon any showing of valuable services.