## BENJAMIN SLADE vs. SOL HARRIS.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

In charging the jury the trial judge is not bound to use the language of the requests; it is enough if his instructions upon these points are correct and adequate.

It is presumed that a member of a learned profession, such as law or medicine, has discharged his full duty, whether legal or moral, until the contrary is shown; and, therefore, in an action to recover attorney's fees, the defendant must sustain the burden of proving the allegations of his answer that the plaintiff's breach of professional duty rendered the services in question worthless.

An attorney is not an insurer or guarantor of the completeness and success of the results of his work. While he should render faithful service in all such matters as he undertakes, should be vigilant and loyal to his client's interests, and should give his best skill and talent, he is responsible for the results of improper or erroneous advice only where an attorney of reasonable knowledge and professional capacity, exercising ordinary care under the same circumstances, would have avoided the error.

The defendant in the present case claimed that the plaintiff's legal services were worthless because, in preparing an agreement under which the defendant's business associate withdrew from the corporation which they had previously conducted together, and sold his interest therein to the defendant, the plaintiff had failed to insert a provision prohibiting him from entering into competition against the corporation in the same line. of business, and ·that, because of this omission, the associate had joined a rival concern, thereby causing injury and loss to the defendant's business. Held that this presented an issue of fact and that the jury's determination of it in favor of the plaintiff was conclusive.

An attorney is entitled to compensation for services which, though not of a professional nature, are incidental and appropriate to his employment.

Where the opinion of an expert is based upon a hypothetical question, the jury should be specifically instructed that its weight is largely dependent upon the extent to which the assumed facts are found to be proven and complete.

In an action to recover attorney's fees, the plaintiff's standing at the bar, the volume of his business, and the compensation usually

Slade *v.* Harris.

received by him, are all relevant to the issue of the reasonable value of his services.

Whether an expert should be permitted to state his opinion upon the testimony merely as he heard it given in the court room, or whether all the facts embraced in the evidence should be incorporated in the question propounded to him, lies within the discretion of the trial court.

An attorney practicing in New York City and having professional activities and interests in Connecticut, is competent to express an opinion as to the reasonable worth of legal services rendered in this State.

The arguments of plaintiff's counsel in the present case reviewed and *held* not to constitute such an appeal to race prejudice or passion as to warrant an interference by this court with the verdict of the jury.

Argued November 14th, 1926—decided January 11th, 1927.

ACTION to recover the value of legal services alleged to have been rendered by the plaintiff to the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $9,668, and appeal by the defendant. *No error.*

One Adolph Mendel had been for a long time a partner in Mendel and Freedman, conducting a department store in New Haven, and later was a large stockholder in Mendel's, Incorporated, a corporation which succeeded the partnership. In 1922, the defendant, Harris, who had been a manufacturer of ladies' garments in New York, purchased one half of the common stock of the corporation, and its name was later changed to Mendel and Harris, Incorporated. In 1923, relations between Mendel and Harris became strained because of differences as to the management of the business. Early in 1924 this condition had become so acute that, apparently, they could not continue in business together, and in February the defendant employed the plaintiff to act as local attorney for him in matters concerning the interest of the defendant

in the corporation and the conduct of its business. Then followed extended conferences and negotiations looking toward an adjustment and separation between Mendel and Harris by the purchase by one of the interest of the other, until finally an option agreement was executed which gave the defendant the right to purchase Mendel's holdings in the corporation for $300,000, which sum the defendant obtained, in part by a loan of $150,000 from a New Haven bank, and he exercised the option and completed the transfer. There appears to have been no controversy as to the facts above stated, so far as the record discloses.

The plaintiff's bill of particulars detailed professional services rendered by him to the defendant from February to May 26th, 1924, relating to these negotiations and transactions and collateral and subsequent matters, including negotiations with different parties concerning the securing of the $150,000 loan, and claimed $10,000 as compensation therefor. The defendant alleged in his answer, in substance, that the plaintiff failed to incorporate in the contract with Mendel a provision that he should not re-enter the same line of business, so as to prevent him from competing with the corporation; that Mendel became president of a competing corporation and actively participated in its business; that the business and good will of Mendel and Harris, Incorporated, was thereby injured and a large loss incurred; and that by reason of negligence of the plaintiff in failing to properly protect the defendant, in this respect, the plaintiff's services were rendered worthless to the defendant.

*Charles S. Hamilton,* with whom, on the brief, was *Walter J. Walsh,* for the appellant (defendant).

*Philip Pond* and *Daniel D. Morgan,* for the appellee (plaintiff).

HINMAN, J.  Error is predicated upon the refusals of the trial court to charge in accordance with several requests, certain portions of the charge as given, numerous rulings on evidence, and the denial of a motion to set aside the verdict on the ground that remarks made by plaintiff's counsel in argument were prejudicial to the defendant.

Many of the assignments of error based upon refusal to charge as requested are disposed of by application of the often reiterated principle that the trial judge is not bound to adopt and use the language of requests to charge, but that it is enough if the instructions upon the points involved are correct and adequate. *Rohde* v. *Nock*, 101 Conn. 439, 442, 126 Atl. 335, and cases cited.

The defendant's first claim of error relates to the failure to charge, in the form and manner requested, with reference to the burden of proof.  The court charged explicitly and correctly that the burden of proof was upon the plaintiff to establish by a fair preponderance of the evidence the substantial allegations of his complaint, among which were the rendition of the services alleged and their value.  To have charged, instead and without more, as defendant requested, would have conveyed the impression that it was incumbent upon the plaintiff to prove, also, that his services were not unskillfully or negligently performed, to the detriment or destruction of their value, as the defendant claimed and alleged.  The court charged, with equal clearness and correctness, that the burden of proving the substantial allegations of the special defense, that the plaintiff's failure to properly advise the defendant and care for and protect his interest had caused him loss and rendered the services of the plaintiff worthless, rested upon the defendant, and that the burden was not upon the plaintiff, in

presenting his case in chief, to show that he possessed and used the requisite skill and care. An attorney, a physician or a person of other profession which involves and implies a reasonable amount of technical skill, knowledge, and probity, is entitled to the benefit of a presumption that he has discharged his duty, whether legal or moral, until the contrary is shown. *Styles* v. *Tyler,* 64 Conn. 432, 464, 30 Atl. 165; *Priest* v. *Dodsworth,* 235 Ill. 613, 617, 85 N. E. 940; *Pennington's Exrs.* v. *Yell,* 11 Ark. 212. The existence of negligence, lack of requisite skill, or other ground of liability is a question of fact for the jury, and the extent and amount of damages therefor must be affirmatively shown by the party claiming them. *Pennington's Exrs.* v. *Yell, supra.*

Several assignments relating to requests to charge and the charge as given converge, through various angles of approach, upon one point—the claim of the defendant that the plaintiff was, in effect, an insurer of the completeness and success of the results of his services,—specifically, that he was responsible to the defendant for the consequences and any loss accruing by reason of the lack of a provision in the contract between Mendel and Harris restricting the former from engaging in competitive business to the latter's detriment. This claim is most directly stated in the fourth request: "If there are contracts to be drawn, or papers to be executed and he [the lawyer] fails to execute the papers properly, or fails to insert in the papers what is necessary for his client's protection, or fails to prepare the proper papers to protect his client's interests," the client may, in a suit against him for fees, defend on the ground that the services were thereby rendered worthless and that the damage was greater than the fees of the lawyer would have been "had he done the work correctly."

As to the duties and liabilities of an attorney in the situation of the plaintiff, the trial court charged as follows: "There is an implied promise on the part of an attorney that he will execute the business entrusted to his professional management with a reasonable degree of care, skill and despatch, because an attorney, in order to recover reasonable compensation due him is under certain obligations to his client; he should render faithful service in all such matters as he undertakes; he should be vigilant and loyal to his client's interests; he should give his best skill and talent; he should be neither negligent nor indolent as to the matters he has in charge; he should be industrious, careful and discreet in his professional work, and he should use his best honest effort and skill in the matter of his employment. If he fails in these respects he most assuredly fails in the discharge of his professional obligations to his client, and to the extent that he so fails in these respects he lessens his efficiency, lessens the value of his services, and lessens the benefits to his client; and his blunders, mistakes and failures in these respects just alluded to, if any there be, may be so many and so great as to warrant a jury in finding that such services were of no value.

"This rule, however, does not require that he is bound to possess or exercise the highest degree of skill, care and diligence, nor is he an insurer or guarantor of his work. It is his duty to bring to the client's business the ordinary legal knowledge and skill common to members of the legal profession and to exercise that reasonable care and diligence which is usually exercised by lawyers. He is not, however, liable for every mistake that may occur in practice. If he is fairly capacitated to discharge the duties ordinarily incumbent upon one of his profession, and acts with a proper degree of attention, with reasonable care, and

to the best of his skill and knowledge, he will not be responsible. And he will not be liable for a mere error of judgment when he consults his client, and the latter after being informed of the legal status of the case approves the course the attorney proposes to pursue. Or, to put it in a still different way, an attorney is liable for any damage resulting to his client by reason of improper or erroneous advice where an attorney of reasonable knowledge and professional capacity, exercising ordinary care under the circumstances, would have avoided the error.

"Generally speaking, attorneys are held to the same rule of liability for want of professional skill and practice and for erroneous or negligent advice to those who employ them, as are physicians, surgeons, and others who hold themselves out to the world as possessing skill and qualifications in their respective trades and professions."

This instruction was in substantial accord with the current of authority on the subject, and as favorable to the defendant as the rules fairly to be deduced from the decided cases would warrant. *Brackett* v. *Norton,* 4 Conn. 517; *Babbitt* v. *Bumpus,* 73 Mich. 331, 339, 41 N. W. 417; *Isham* v. *Parker,* 3 Wash. 755, 29 Pac. 835; *Citizens Loan Fund & Sav. Asso.* v. *Friedley,* 123 Ind. 143, 23 N. E. 1075; *Harriman* v. *Baird,* 39 N. Y. Supp. 592; 2 R. C. L. p. 1062; 6 Corpus Juris, 682, 696.

The question whether "under similar circumstances an attorney of reasonable knowledge and professional capacity, exercising ordinary care," would have done as the plaintiff did, was properly submitted to the jury as a question of fact, together with a fair statement of the facts claimed to have been proved and bearing upon such determination. It was pointedly presented by the special interrogatory, "Did the plaintiff fail in his duty to the defendant as such duty has

been defined by the court; and did such failure materially destroy or diminish the claimed value of his services?" The specific point to be determined was succinctly explained by the court to be "whether Mr. Slade failed in his duty to his client by not incorporating in the agreement a clause prohibiting Mr. Mendel from again engaging in business, thereby causing a loss to the defendant." That this issue was considered and determined is evidenced by the jury's negative answer to the interrogatory. It might have been preferable to separate the inquiry as to the plaintiff's failure in duty from that relating to the consequences, but the general answer fairly implies a conclusion by the jury that the plaintiff was not at fault in the respect complained of.

In another request the defendant sought to limit the plaintiff's right to recover to compensation for services which were strictly legal as distinguished from those having to do with the obtaining of loans by the defendant. The plaintiff, in his complaint and bill of particulars, specifically claimed compensation for financial as well as legal services, but, that aside, such business matters as were incident and appropriate to his employment were included within it. The scope of plaintiff's duty and responsibility in this respect was aptly explained. The lawyer is, as was stated, "something more than a mere loud-speaker for the law books."

That portion of the charge which concerns the evidence of experts as to the value of the services rendered presented, in substance, the points covered by the voluminous request on that subject, except certain strictures and limitations upon the use and weight of expert testimony which had no discernible application arising from the facts in evidence. The bearing, upon the weight of an expert opinion based upon a hypo-

thetical question, of the extent to which the jury find the assumed facts to be proven and complete, was not stated as specifically as it should have been, but the general subject of the weight and effect of such evidence was so presented that the defendant could not have been harmed.

Error is claimed because the fees "usually received" by the plaintiff were mentioned as one element to be considered in ascertaining the reasonable worth of his services, but this instruction accords with *Phelps* v. *Hunt,* 40 Conn. 97, 101: "The amount of business done, perhaps the amount of income, certainly the amount of charges," may be considered as tending to prove one's standing at the bar, a relevant consideration in this connection. The charge on the subject of compensation, as a whole, was consistent with *Phelps* v. *Hunt, supra,* and free from harmful defects.

Careful consideration of the other assignments relating to the charge develops no occasion for comment other than that they disclose no material error.

One reason of appeal concerns the testimony of Meyers, the New York attorney who also acted for the defendant in connection with the Mendel-Harris matter. He was asked if he heard the plaintiff's testimony as to what he did for Harris, and, having answered in the affirmative, was permitted, over objection, to state his opinion as to the reasonable value of the services which he had thus heard described. To permit a witness to base his opinion on testimony as he heard it, instead of enunciating in a question all the facts embraced in such testimony, was within the discretion of the court. *Roraback* v. *Pennsylvania Co.,* 58 Conn. 292, 20 Atl. 465. The circumstances here did not present the difficulties and consequent limitations suggested in *Barber's Appeal,* 63 Conn. 393, 408, 27 Atl. 973, but, on the contrary, the situation of the

witness created the exceptional occasion for the exercise of such discretion. As to the competency of the witness, while in the absence of special information an attorney may be held not to have adequate knowledge of the fees customarily charged in a distant State, this infirmity can hardly be held to attach to Meyers, a practitioner in a city adjoining this State and having professional interests and activities here. At most, the objection, as applied to him, could affect the weight only, rather than the admissibility of his opinion.

As we have already noted, the plaintiff's standing at the bar was an element in the determination of the value of his services, and the testimony of Attorney Tuttle pertaining thereto was admissible.

Of the remaining rulings on evidence, it need only be said that none of them disclose harmful error or furnish a subject for profitable discussion.

The junior counsel for the plaintiff, in opening his argument to the jury, related an, ancedote which, the defendant protests, was an appeal to race prejudice. We deem it quite apparent that, as the plaintiff claims, the intent was merely to illustrate the plaintiff's contention that the defendant was satisfied and pleased with the plaintiff's services and their results until he learned the amount of compensation claimed therefor. Especially in the absence of any more pointed appeal or resort to racial or religious distinctions or prejudice, which the trial court expressly states was not undertaken, we think that this feature of the argument was devoid of the implication and purpose now sought to be ascribed to it, and could have had no effect which was injurious to the defendant.

The senior counsel, in his argument, made reference to the defendant's former connection with garment manufacturing in New York and to the alleged keenness developed by those so engaged, and mentioned,

further, the reputed existence of sweatshops in that city. The allusion to the defendant's business experience was adapted to suggest a difference in viewpoint as an element in the dissensions as to business methods culminating in the separation between Mendel and Harris and, of itself, was not outside the pale of argument. The reference to sweatshops was gratuitous and improper, but very likely was a not unnatural fruit of the controversial attitude between counsel which much that appears in the record indicates permeated the atmosphere of the trial. Upon objection being made to this part of the argument, the court very pointedly absolved the defendant from any connection, upon the evidence, with any such proposition, and admonished the jury that they were to decide the case upon evidence and not argument.

The action of the trial judge in refusing to set aside the verdict attests that he did not find or believe that the arguments complained of influenced the verdict. His situation to judge of their effect was advantageous, and we find no sufficient reason to disagree with, much less to overrule, his conclusion. However, we are not to be understood as condoning excursions outside the legitimate limits of argument, even though the effect fall short of prejudice fatal to the verdict. *State* v. *Ferrone,* 96 Conn. 160, 113 Atl. 452; *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 652, 78 Atl. 422; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 710, 52 Atl. 490:

There is no error.

In this opinion the other judges concurred.