355 F.2d 879
 UNITED STATES of America ex rel. Erskine GATES, Petitioner Appellant,
v.
Frank J. PATE, Successor to Joseph E. Ragen, Warden of The Illinois State Penitentiary (Stateville Branch), Joliet, Illinois, Respondent-Appellee.
 No. 15244.
 United States Court of Appeals Seventh Circuit.
 January 20, 1966.
 
 Robert S. Hunt, Chicago, Ill., for appellant.
 William G. Clark, Atty. Gen., Phillip B. Robinson, Asst. Atty. Gen., Chicago, Ill., for appellee.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 The relator, Erskine Gates, was convicted in 1939 on three counts of burglary and was sentenced to serve a term of one year to life. In 1956, he sought writ of habeas corpus in the United States District Court. On appeal, this Court reversed denial of the writ, stating that relator was entitled to a hearing.
 
 
 2
 In the interim, however, relator was enlarged on parole, and this Court granted the Attorney General's motion to vacate the opinion as moot. The petition for writ of habeas corpus was dismissed without prejudice.
 
 
 3
 When relator was remanded for violation of parole, he filed his current petition for writ of habeas corpus, on which there was a hearing in the United States District Court. Documentary and oral evidence was adduced. Post-hearing briefs were filed. The District Judge filed his Memorandum, made Findings of Fact, and Conclusions of Law, and entered an order denying the writ. This appeal followed.
 
 
 4
 The relator's contentions may be summarized as follows:
 
 
 5
 1. The evidence indicated that he was arrested on the basis of information revealed by one Ira Shaw; that the arrest of Shaw was invalid and that information obtained from him cannot be used to establish probable cause for relator's arrest.
 
 
 6
 2. Relator was not taken before a magistrate without unnecessary delay; and the evidence shows that he was denied access to friends, relatives and counsel.
 
 
 7
 3. (a) While the District Court found none of the relator's Constitutional rights were violated, there was no explicit finding that his trial met the degree of fairness required by the Constitution, and as deprivation of counsel made evidence obtained during such deprivation inadmissible, his conviction was invalid.
 
 
 8
 (b) Although there was testimony that the relator admitted his guilt to his counsel, a "not guilty" plea was allowed to stand with the result that relator was not admonished by the Court as to the effect of a guilty plea, and yet the trial was conducted as though he had pleaded nolo contendere, a situation to which relator did not give understanding consent.
 
 
 9
 (c) Through no apparent fault of the Public Defender, insufficient consultation time was allowed to examine potential witnesses, determine objections and the course to be followed on trial.
 
 
 10
 The testimony of the witnesses was in conflict on several vital issues. It is axiomatic that this Court's will not set aside the District Court's findings of fact unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. This rule is applicable to review of habeas corpus as well as other cases. Barber v. Gladden, 9 Cir., 1964, 327 F. 2d 101, 103-104. The rule is particularly apt where, as here, many of the findings turn on credibility.
 
 
 11
 The District Court found that a detail of the Chicago Police Department was concentrating on a series of unsolved burglaries in 1939. An anonymous telephone call suggested inquiry of Ira Shaw at a stated address. Shaw was found at that address. When brought to the police station he confessed, giving details of the locations and property taken in the burglaries which tallied with facts already known to the police. He turned over stolen items which were in his home and relinquished pawn tickets for other stolen items. He specifically implicated the relator as one of his accomplices.
 
 
 12
 According to the relator's testimony, he was arrested by three Chicago police officers at his home on February 28, 1939, in the presence of his mother and sister. The District Court found that the arresting officers had specific and reliable information sufficient to "`warrant a man of reasonable caution in the belief' that a felony had been committed. Carroll v. U. S., 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]." (1925). The evidence adduced would clearly support an inference that Shaw's statement at the police station was an intervening independent act of free will. We have here no such regrettable circumstances as those attending the arrest and statements of Toy in Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) on which relator relies. In that case, federal agents rang the bell of a laundry of which James Wah Toy was the operator, although his name was not on the door, at 6 a. m. When the door opened, one agent said he was calling for laundry. Toy told him the laundry would open at 8 a. m. and advised him to return then. He tried to close the door. The agent then identified himself. Toy slammed the door and ran back into his living quarters behind the laundry. The agents then broke in and pursued Toy into his bedroom where his wife and child were asleep. Toy reached into a drawer. One agent drew his pistol and handcuffed Toy. There was nothing in the drawer. A search of the premises disclosed no narcotics.
 
 
 13
 It was in these circumstances, when told that an informer said he got narcotics from Toy, that Toy replied that he had not been selling narcotics but knew somebody else who had, naming one "Johnny" whose last name he did not know, and describing the house in which Johnny lived. The circumstances in which Shaw made his statements were quite different.
 
 
 14
 In Wong Sun, the informer gave no such accurate and precise information as would lead the officers directly to the suspect. As the court there said (371 U. S. 480, 83 S.Ct. 413) the "accusation merely invited the officers to roam the length of Leavenworth Street (some 30 blocks) in search of one `Blackie Toy's' laundry — * * * Not the slightest intimation appears on the record, or was made on oral argument, to suggest that the agents had information giving them reason to equate `Blackie' Toy and James Wah Toy — * * * or had some information of some kind which had narrowed the scope of their search to this particular Toy" whose name did not appear over the door of the laundry into which the agents entered by force. That is not our case.
 
 
 15
 There was abundant cause for the arrest of relator. There was evidence to show that the arresting officers identified themselves and told the relator that Shaw had implicated him in burglaries. Relator's mother and sister were present. The relator testified that he was subjected to brutality and was denied communication with friends, relatives or counsel. This was contradicted by other testimony. The District Judge who saw and heard the witnesses did not believe the relator. He found specifically that the relator was neither denied communication nor subjected to police brutality after his arrest. The relator contends that this finding was clearly erroneous, but we find no support in the record for that contention.
 
 
 16
 There was a delay of several days in bringing the relator before a magistrate. Police Officer Callahan testified that the relator was extremely co-operative. There was evidence that he not only gave the police certain articles from his home which were placed in the inventory of property taken in the burglaries, but also assisted them in recovering a considerable part of the stolen property, even to suggesting a delay so that he could take the officers to other locations for that purpose. Under the circumstances of this particular case, we are constrained to agree with the District Court that no unreasonable delay occurred. People v. Jackson, 1961, 23 Ill.2d 274, 278, 178 N.E.2d 299. We are satisfied that there was no denial of due process in this connection.
 
 
 17
 Counsel was appointed for relator after his arraignment. There is no basis here for a finding that relator at any earlier time requested and was denied counsel, as was the case in Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, which relator asks us to apply to the circumstances of his 1939 arrest. Escobedo and his attorney despite repeated requests by each were afforded no opportunity to consult (378 U.S. 481, 84 S.Ct. 1758).
 
 
 18
 The relator contends that failure to show affirmatively that he was advised of his right to counsel, and of his right to remain silent, is fatal to his conviction, regardless of the voluntary nature of his oral statements and assistance to the police in recovering the stolen property. We have no question here of a written confession.
 
 
 19
 We have carefully studied Escobedo and, aside from its distinguishing characteristics, it is our settled conviction that it was not intended to have the broad retroactive effect for which relator argues. United States ex rel. Walden v. Pate, Warden, 7 Cir., 1965, 350 F.2d 240, 243.
 
 
 20
 The relator testified that he protested his innocence. A plea of "not guilty" was entered. The District Court concluded from the evidence that relator admitted his guilt to the two attorneys from the Public Defender's office who interviewed him and that he told them of the admissions he had made to the police; that the trial tactics adopted, with the full understanding and agreement of the relator, were to plead "not guilty" but not to contest the facts, and that relator knew the possible consequences of this course of action. Evidence of relator's guilt was adduced at the trial. His guilt was not merely stipulated.
 
 
 21
 In the circumstances of this case, having in mind the conceivable adverse effects of a vigorous but futile contest on the facts, with the possibly avoidable disclosure of aggravating elements, who is to say that this strategy was not competently adopted in the relator's own best interest? Given the facts as found by the District Court, little time for preparation was required by the defense counsel. Adequate time was allowed.
 
 
 22
 We are in full agreement with the District Court that none of the relator's Constitutional rights were violated. We are satisfied that he received a fair trial. The order of the District Court denying petition for writ of habeas corpus is affirmed.
 
 
 23
 The Court wishes to express its gratitude to Mr. Robert S. Hunt of the Illinois bar who represented the relator as Court-appointed counsel in this appeal with skill and diligence.
 
 
 24
 Affirmed.