As we said in United States v. Clarke, 343 F.2d 90 (3 Cir. 1965) at page 93:

> "It is one thing to 'strike' evidence from the notes of testimony; it is something else again to 'strike' its searing impress from a juror's mind."

It cannot be gainsaid here that the prosecutor's statement that the defendant had committed an assault on Eudora Douglas, and escaped from custody, prior to the assault and escape charged in the Information, could well have had a "searing impress" on a juror's mind.

As was said in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), where inadmissible evidence had been presented to the jury and the judgment of conviction was reversed for that reason:

> "* * * if one cannot say, *with fair assurance,* after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, *it is impossible to conclude that substantial rights were not affected.* The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. *It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.*" (emphasis supplied)

In the instant case the Information in Count 1 charged that the defendant "did wilfully and unlawfully, and with intent to commit Murder, commit an assault upon the person of one Eudora Douglas, by inflicting several wounds about her body with a sharp instrument", and the jury found the defendant guilty of the offense charged. It had the choice, as the trial court properly charged, of finding him guilty of the lesser offense of aggravated assault had it concluded that there was absent the element of the "intent to commit Murder". Or it could have conceivably only found him guilty of simple assault and battery, as the trial court charged, if it concluded that only that crime was established by the evidence. The jury's finding that the defendant was guilty of an assault with intent to commit murder might well have been influenced by the evidence of his earlier wrongdoing and the criminal propensity which that evidence indicated.

As already indicated, it cannot be said "with fair assurance" that the jury's verdict here was "not substantially swayed" by the prosecutor's statement and the probation officer's testimony, and thus "it is impossible to conclude that substantial rights were not affected."

For the reasons stated the judgment of sentence will be vacated and the cause remanded to the District Court with direction to grant a new trial.

Junior Wesley **BERNARD**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 22464.

United States Court of Appeals
Fifth Circuit.

April 19, 1966.

Rehearing Denied May 12, 1966.

Thomas M. Haas, Mobile, Ala., for appellant.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., for appellee.

Before RIVES and THORNBERRY, Circuit Judges, and GARZA, District Judge.

RIVES, Circuit Judge:

Upon a jury's verdict Bernard was found guilty of bank robbery,[1] and was sentenced by the court to imprisonment for ten years. He insists on appeal that two written statements and an oral statement admitted over timely objections were fruits of an illegal arrest without a warrant, not based on probable cause, and hence that the statements were admitted in violation of the Fourth Amendment.

At about 1:30 P.M. on Saturday, June 20, 1964, a young man in his early twenties, dressed in a Navy orange flight suit, wearing dark glasses and a fishing or baseball type cap, entered the Union Bank of Repton, Alabama.[2] Only one customer and four employees were in the Bank. At gun point the young man robbed the Bank of $16,386.00.

After the robber fled through the door, the customer and employees rushed outside and saw a "Corvette Sting-Ray" automobile cross over the railroad tracks in a northerly direction, about fifty yards from the entrance to the Bank. The get-away car containing the robber was driven by another man whom the witnesses could not identify. It was abandoned in the woods adjacent to the highway about three miles out of Repton, where it was discovered at about 4:00 P.M.[3]

From a short time after the robbery until the get-away car was found, road blocks were established on the highways leading out of Repton. About forty minutes after the robbery had been reported, a Chevrolet pick-up truck driven by the appellant Bernard, with one Lawrence E. Vonderau as a passenger, approached one of the road blocks which was then manned by J. R. Findley, a Lieutenant of the Police Department of the City of Brewton, Alabama.[4] Mr. Findley recognized the truck and both of its occupants who also lived in Brewton. When Bernard and Vonderau denied having seen the get-away car, and explained that they were going fishing, Mr. Findley allowed them to pass through the road block without search or further questioning.

Mr. B. L. Walker, who was engaged in the small loan business in Brewton, testified that about the last of April or the first of May preceding the bank robbery of June 20 he had sold a revolver to the appellant Bernard. When shown the weapon later identified as the one carried by the bank robber, Mr. Walker "couldn't be sure" that it was the pistol which he sold to Bernard.

---

1. In violation of § 2113(a) (d), Tit. 18, U.S.Code.

2. The deposits of which were insured by the Federal Deposit Insurance Corporation.

3. The get-away car had been stolen the night before the robbery.

4. By highway, Brewton is approximately 80 miles northeasterly from Mobile, and about 38 miles southeasterly from Repton.

On Friday afternoon, August 14, 1964, a Special Agent of the F.B.I. arrested Vonderau at Brewton. Vonderau later pleaded guilty to the robbery. He testified at length against Bernard and claimed that Bernard had furnished the pistol and was the driver of the get-away car.

As the F.B.I. Agent was proceeding with his interview of Vonderau, and apparently after Vonderau had implicated Bernard, the Agent telephoned to the United States Attorney in Mobile. It was then nearly 5:00 P.M. and it appears that the United States Commissioner in Mobile had left his office. The United States Attorney undertook to authorize the F.B.I. Agent to arrest Bernard. Two other F.B.I. Agents were dispatched to Brewton for the purpose of interviewing Bernard. The F.B.I. Agent who was interviewing Vonderau wanted to complete that interview and accordingly requested the Sheriff of Escambia County[5] to make the arrest for him. The Sheriff accordingly arrested Bernard at his place of employment, telling him "that he was under arrest by authority of the Government." [6]

Mr. Bernard testified as to his arrest by the Sheriff as follows:

"A. He walked in to' me and said 'Wes, you're under arrest.' I said 'What for?' He said 'Repton bank robbery.' I said, 'Man, you're kidding; I know nothing about it.' He said 'No.'

"Q. What else was said by either one of you? Sir?

"A. He said 'No, I'm not kidding you; I'm authorized to arrest you.'

"Q. 'Authorized to arrest you'?

"A. 'By the FBI'."

The Sheriff conducted Bernard to his office in the County Court House where the F.B.I. Agent was interviewing Vonderau, and, at the Agent's direction, put Bernard in company with a deputy sheriff in an adjoining office while the Agent continued to talk to Vonderau. Some 30 minutes later the other two agents arrived. According to Bernard: "They walked in and identified themselves, introduced themselves and identified themselves and informed me that I had been arrested under the authority of the District Attorney of the United States in Mobile for my part of a conspiracy in the Repton Bank robbery." Bernard testified that he was not aware of his legal rights, and further:

"Q. Did anyone attempt to explain any of your legal rights to you before you talked to Agents Gilman and Keiser?

"A. No sir, not to the best of my knowledge.

"Q. Not to your knowledge?

"A. Not that I can remember, no sir."

Bernard admitted that the agents did not mistreat him or threaten him or hold out any inducement or offer of reward to him, that at all times in his presence they conducted themselves as gentlemen and were not at any time rude or discourteous. He admitted that he gave the agents a statement which was reduced to writing and signed, and that on the following Monday after he had been arraigned, he gave them another written statement. This second statement is brief and is copied in the margin.[7] In addition, on

5. Brewton is the County seat of Escambia County, Alabama.

6. On his way to make the arrest, the Sheriff saw Officer Findley, the Lieutenant of Police of Brewton, on the street (Findley had his child with him) and asked Findley to go with him. Findley then accompanied the Sheriff when he made the arrest.

7. "Mobile, Alabama, 8–17–64: I, Junior Wesley Bernard, make the following free and voluntary statement to Arnold C. Merrow and Frank A. Gilman, who have identified themselves to me as Special Agents of the FBI. I have been advised by Special Agent Frank A. Gilman that I have the right to talk with a lawyer of my own choice or anyone else before saying anything at all and that, if I cannot pay for a lawyer, the judge will get one for me. No promises or threats have been made to me to make a statement and any statement I do make can be used against me in court.

"I am 39 years old and I finished the 12th grade in school. I have been shown

that Monday one of the agents orally interviewed Bernard about further details of the robbery.

About 8:15 P.M. on the Friday of his arrest, Bernard left Brewton under arrest en route to Mobile. About 10 o'clock the next morning, Saturday, he was arraigned before the United States Commissioner in Mobile.

The two agents testified that before Bernard made any statement one of them informed him that he was not required to make a statement, that any statement he did make could be used against him in court, and further that he had a right to talk with a lawyer of his own choice or anyone else before saying anything, and that, if he could not pay for a lawyer, the judge would get one for him.

Bernard's second written statement and his oral statement on Monday came after he had been arraigned before the United States Commissioner and fully advised by the Commissioner of his constitutional rights. His first written statement was given on the preceding Friday evening after he had been arrested by the Sheriff at the request of the F.B.I. Agent who was interviewing Vonderau, and also after he had again been placed under arrest by the two F.B.I. Agents who advised him of his rights and then interviewed him.

■ Both arrests were made without a warrant. It appeared that after Vonderau's statement had implicated Bernard, the United States Commissioner was not available to issue a warrant. The question is whether the F.B.I. Agents, or either of them, had sufficient information to constitute cause for the arrest of

Bernard. The answer "must be measured by the facts of the particular case." Wong Sun v. United States, 1963, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441. It is because of that principle that we have set forth the pertinent facts in such detail.

It is a matter of regret that the F.B.I. Agents were not examined as to their knowledge or information of some of the evidence. For example, there is no testimony as to whether they had been informed by officer Findley or anyone else about Findley passing the Chevrolet truck containing Bernard and Vonderau through the road block some forty minutes after the robbery had been reported. Nor is there any testimony as to whether they had been informed of the witness Walker's sale of a revolver to Bernard. It is clear that the Agents knew that a felony had been committed. There is a fair inference that they also knew that Vonderau admitted having committed the robbery and implicated Bernard as the driver of the get-away car.

■ Bernard's able counsel insists with much force that the Agents were not justified in acting solely on the information supplied to them by Vonderau, because they had no basis in experience for confidence in his reliability. The authority mainly relied on by Bernard's counsel is Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407.[8] While the Court in that case referred to the unreliability of the informant as one reason for holding that there was no probable cause for Toy's arrest, the main emphasis was upon the vagueness and imprecision of the information. See 371

---

a .38 calibre S&W revolver, 5-shot, bearing serial No.E#–4339 and 6222. This is the gun I acquired from B. L. Walker, Manager, Hub Finance Company, Brewton, Alabama, some time in February or March, 1964. This is also the gun which I gave to Larry Vonderau on June 20, 1964 and which he used to rob the bank at Repton, Alabama, on that date.

"I have read the above statement, consisting of one and a half pages and it is true."

The statement was signed by Bernard and witnessed by the two F.B.I. Agents.

8. Counsel cites also: Silverman v. United States, 1961, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734; Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Collins v. Beto, 5 Cir. 1965, 348 F.2d 823; Gatlin v. United States, 1963, 117 U.S.App.D.C. 123, 326 F.2d 666; Bynum v. United States, 1958, 104 U.S.App.D.C. 368, 262 F.2d 465.

U.S. 480–484, 83 S.Ct. 407. There the information did not particularly describe the person to be seized or arrested. Here there was no vagueness but the utmost precision. Vonderau put his finger on Bernard as the driver of the get-away car. True, Vonderau's reliability was not established. The case would be clearer if it had been shown that the Agents had information or knowledge of the clear corroborating circumstances. Unfortunately, the record is silent as to whether the agents were informed of those events. Assuming, however, that they were not, and that they were informed only that the robbery had been committed, that two men left in the get-away car, that Vonderau confessed that he committed the robbery and implicated Bernard as the driver of the get-away car; assuming, we repeat, that the Agents had no more information, we nevertheless conclude that the Agents were called on to act promptly and that they did have probable cause for the arrest of Bernard without a warrant. Any other rule would be impractical and unworkable.

The judgment is therefore affirmed.