STATE OF CONNECTICUT *v.* JAMES JACKSON

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued October 13, 1971—decided March 1, 1972

*Abbot B. Schwebel,* assistant state's attorney, with whom, on the brief, was *Donald B. Caldwell,* state's attorney, for the appellant (state).

*Martin B. Burke,* special public defender, with whom, on the brief, was *Leo B. Flaherty, Jr.,* for the appellee (defendant).

LOISELLE, J. On August 13, 1970, the state's attorney for Tolland County applied for a bench warrant for the arrest of the defendant. The application charged that the defendant committed the crime of breaking and entering with criminal intent, in violation of § 53-76 of the General Statutes, and the crime of larceny in an amount in excess of $250 but less

than $2000, in violation of § 53-63 of the General
Statutes. An official of the police department of the
town of Vernon filed the sole affidavit supporting
the application. Having considered the application
and the affidavit, a Superior Court judge found that
probable cause existed for the arrest of James Jack-
son, the defendant, and ordered the issuance of a
bench warrant for his arrest. The defendant filed
a motion to dismiss the information against him on
the ground that the affidavit was insufficient to sup-
port a finding of probable cause. The court granted
the motion and rendered judgment dismissing the
information. The state, with permission from the
trial court, appealed from the judgment, assigning
as error the granting of the defendant's motion to
dismiss the information.

The affidavit of the police officer disclosed the fol-
lowing facts: On June 12, 1970, Ruth Maloney, ad-
ministrator of the Rockville Memorial Nursing
Home, complained to the police that the office safe,
containing money, checks and jewelry, had been
stolen from the premises. As a result of his investi-
gation, the affiant knew that some person or persons
had broken into the nursing home and removed the
safe. On June 30, 1970, the affiant, after warning
Ronald F. Strano, Jr., of his constitutional rights,
obtained a written statement from him that on
June 11, 1970, at about 10:30 p.m., he broke into
the nursing home by prying open a screen and win-
dow, removed the safe and loaded it into his vehicle.
On July 2, 1970, the affiant arrested Strano and
charged him with breaking and entering and larceny.
One month later, on August 6, the affiant inter-
viewed Strano in the presence of his counsel and
obtained a second written statement from Strano.
In that statement Strano named the defendant as

an accomplice in breaking and entering into the nursing home on June 11, at about 11:55 p.m. Strano stated that he had talked with the defendant about committing a theft and that the defendant agreed to the taking of the safe from the nursing home. The statement also indicated that Strano, after gaining entry into the nursing home through a window, passed the safe through the window to the defendant and that Strano opened the safe, using a combination furnished by an employee of the home, a possible accomplice. The officer also asserted that, to the best of his knowledge, the credibility of Mrs. Maloney was good; he did not mention Strano's credibility.

The fourth amendment to the United States constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." See also Conn. Const. art. 1 § 7. "Through the fourteenth amendment the fundamental federal constitutional safeguards as to the issuance of warrants embodied in the fourth amendment, as interpreted and applied in decisions of the United States Supreme Court, are made obligatory upon the states. *Ker* v. *California*, 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726." *State* v. *Licari*, 153 Conn. 127, 132, 214 A.2d 900. The proscriptions of the fourth amendment apply to arrest warrants as well as to search warrants. *Aguilar* v. *Texas*, 378 U.S. 108, 112 n., 84 S. Ct. 1509, 12 L. Ed. 2d 723; *Giordenello* v. *United States*, 357 U.S. 480, 485–86, 78 S. Ct. 1245, 2 L. Ed. 2d 1503; *State* v. *Saidel*, 159 Conn. 96, 98, 267 A.2d 449; *State* v. *Licari*, supra. In testing the validity of the warrant, the reviewing court can only consider information brought to the magistrate's attention. *Whiteley* v. *Warden*, 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306; *Aguilar* v. *Texas*,

supra, 109 n.; *Giordenello* v. *United States,* supra, 486. Since the only information before the issuing authority was the affidavit of the police officer, the decisive question is whether the facts recited in it were sufficient to support a finding of probable cause. *Giordenello* v. *United States,* supra; *State* v. *Saidel,* supra, 99.

The principles by which we test the adequacy of an affidavit have been designed to insure that a disinterested judicial officer makes his own common-sense judgment that a suspect probably has, or probably has not, been involved in the commission of a crime. *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637; *Aguilar* v. *Texas,* supra, 110–11; *Giordenello* v. *United States,* supra. As stated by Mr. Justice Jackson in *Johnson* v. *United States,* 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436: "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Because a magistrate is obviously relying solely on the belief of the officer seeking an arrest when he issues a warrant on the basis of an affidavit containing only conclusions, the fourth amendment requires that an affidavit in support of a warrant contain enough information to support a magistrate's own judgment. This explains the following statement from the landmark case of *Aguilar* v. *Texas,* supra, 114–15: "[T]he magistrate must be informed of some of the underlying circumstances . . . . Otherwise, 'the inferences from the facts

which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead by a police officer."

Once the magistrate is informed of the evidence which prompts a police officer to seek an arrest, he may rely on the ordinary dictates of "common experience" and not be "confined by niggardly limitations or by restrictions on the use of . . . [his] common sense." *Spinelli* v. *United States,* supra, 415, 419. As the term probable cause implies, the issue is one of probabilities. "These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879; *State* v. *Wilson,* 153 Conn. 39, 212 A.2d 75. This standard must be understood to mean that a judicial officer has done all that he should when he has answered for himself the question: "Was this suspect probably involved in criminal activity?" His answer "should be paid great deference by reviewing courts"; *Jones* v. *United States,* 362 U.S. 257, 270, 80 S. Ct. 725, 4 L. Ed. 2d 697; *Spinelli* v. *United States,* supra, 419; and "doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684.

In the case at bar, a police officer of the town of Vernon submitted an affidavit in support of a warrant, which relied in part on the statements of Ronald F. Strano, Jr., as the basis for the officer's belief that the defendant had committed a crime. A judicial officer may treat this information from Strano on the same plane as information from the

police officer, so long as there is a "substantial basis for crediting" it. *Jones* v. *United States,* supra, 269. *Aguilar* v. *Texas,* supra, 114, has restated this requirement in two parts: The issuing officer must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable.

The first *Aguilar* test is clearly met in the case at bar. If credited, the facts supplied by the informant more than entitle him to believe that the defendant participated in the crimes; the informant was not only an eyewitness to the crime but also a participant.

The second test is also met. While the affiant did not have sufficient information about the informant's character or propensity for truthfulness to credit him by method (a), the affiant did have sufficient information to credit him by method (b). The issuing officer was adequately informed of the circumstances from which the affiant concluded that Strano's information was accurate.

A catalog of some of the landmark cases on this point shows that affidavits held insufficient were devoid of detail and unable to support any independent judgment. *Whiteley* v. *Warden,* supra, 560; *Aguilar* v. *Texas,* supra, 108; *Giordenello* v. *United States,* 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503; *Nathanson* v. *United States,* 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159. In the major cases which involved more than these mere recitals, the United States Supreme Court upheld several because of evidence corroborating some of the details included in the affidavit.

*Rugendorff* v. *United States,* 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887; *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. In the present case, the affidavit went far beyond a recital of conclusions. From it, a judicial officer could conclude that there was substantial corroboration for Strano's statement. The theory of corroboration is that a statement which has been shown true in some respects is reasonably likely to be true in the remaining respects. Whether such a theory is sound has been answered in the affirmative, dramatically, by *Draper* v. *United States,* supra, and recently, by *Whiteley* v. *Warden,* supra. Thus, if there has been sufficient corroboration, a statement may support a warrant regardless of its source. See *United States* v. *Irby,* 304 F.2d 280 (4th Cir.), cert. denied, 371 U.S. 830, 83 S. Ct. 39, 9 L. Ed. 2d 67; *United States* v. *Woodson,* 303 F.2d 49 (6th Cir.), cert. denied sub nom. *Gant* v. *United States,* 373 U.S. 941, 83 S. Ct. 1548, 10 L. Ed. 2d 696; *Katz* v. *Peyton,* 334 F.2d 77 (4th Cir.), cert. denied, 379 U.S. 915, 85 S. Ct. 261, 13 L. Ed. 2d 185, rehearing denied, 379 U.S. 984, 85 S. Ct. 643, 13 L. Ed. 2d 577.

In the case at bar, there are several factors which, at least in combination, reasonably support an inference of corroboration. The affiant's own knowledge implicitly but obviously confirmed some of the particulars of Strano's statements, e.g., the actual occurrence of the incident, its location and the method of operation. In *Draper* v. *United States,* supra, the affiant verified all of the informant's information except that of the crime itself. There, the court held this to be a substantial basis on which to find probable cause. The affiant in the present case obviously had information from additional sources. Mrs. Ruth Maloney confirmed some of the particulars of

Strano's first statement. Such corroborating information is recognized as supporting a magistrate's inference of reliability. *Jones* v. *United States,* supra. Where information from different sources dovetails, corroboration exists. *United States* v. *Crews,* 326 F.2d 755 (4th Cir.), cert. denied, 377 U.S. 955, 84 S. Ct. 1634, 12 L. Ed. 2d 499. The affidavit implies on its face that the affiant had previously received from Strano "correct information," i.e., the June 30, 1970, statement. At least, the affidavit necessarily implies that the details of the theft described by Strano in the first statement were consistent with police investigation and with details of the theft provided by the victim. But for such consistency, there is no logic to, or explanation for, the course taken by the police investigation, as evidenced by its request for the warrant. That a prior record of reliability is a factor supporting current truthfulness is enunciated in *Jones* v. *United States,* supra.

A more substantial basis for crediting Strano's statement is that Strano revealed the information to the affiant in the presence of, and on the advice of, his own counsel. A magistrate is doubtless familiar with the professional integrity to which an attorney subscribes in his attorney's oath and the professional discipline to which he is subject, as measured by the canons of professional ethics. Practice Book, Canons of Professional Ethics, Nos. 16, 32, Practice Book, pp. 7, 12. The magistrate knew from the affidavit that Strano acted on the advice of counsel. That an attorney had sworn to do no falsehood nor consent to any being done and to give information thereof if he had knowledge of it, and not wittingly to promote any falsehood or give aid or consent to it gives some assurance that the accusation made on his advice is trustworthy. That the

canons by which he is guided require him to restrain his client from improprieties and to give no advice involving disloyalty to the law or disrespect for the judicial office, coupled with the likelihood that he is familiar with his client's true situation, contribute to the probability that a statement to which he lends his counsel is truthful.

"A dual trust is imposed on attorneys at law. They must act with fidelity both to the courts and to their clients. They are bound by canons of ethics which are enforced by the courts. . . . It demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and disinterestedness, absolute integrity and utter renunciation of every personal advantage conflicting in any way directly or indirectly with the interests of his client." *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 234, 140 A.2d 863. Further, attorneys in Connecticut have interwoven dual functions as members of the bar and as commissioners of the Superior Court, and "are charged with using these powers and acting by the authority of the state in the interests of justice." *In re Application of Griffiths,* 162 Conn. 249, 256, 249 A.2d 281. It is a well-established and honored presumption that an attorney has discharged his full duty. *Slade* v. *Harris,* 105 Conn. 436, 440, 135 A. 570. It is especially likely that an attorney will have exercised great care in allowing such a statement in the climate of today, where attorneys are attuned to using every lawful defense for the benefit of their client before they will allow such client to admit his guilt. It is obvious that under these circumstances the presence of counsel constitutes an underlying circumstance which should have substantial weight in crediting the statement.

That Strano's second statement is against his penal interest is another substantial basis for crediting it. As stated in *United States* v. *Harris,* 403 U.S. 573, 584, 91 S. Ct. 2075, 29 L. Ed. 2d 723, magistrates should not be prevented, in warrant proceedings, "from crediting, in all circumstances, statements of a declarant containing admissions of criminal conduct." It is stated in the *Harris* case (p. 583): "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. . . . Admissions of crime . . . carry their own indicia of credibility." Had there been only one statement, the fact that it was against penal interest would be apparent. There was here, however, a prior, similar statement. Thus, it may be argued that the admission of the second statement loses its effect as an indicia of credibility. In this connection, it is erroneous to conclude that Strano's second statement had other than an adverse impact. Reiterating the admission in the presence of counsel effectively precluded Strano from asserting that the first statement was infirm in any legal respect, that he did not understand the nature of his action or that he was coerced. No subsequent denial would be at all persuasive in the face of a repeated admission with counsel present. More obviously, Strano admitted, in his second statement, to facts which render him subject to a charge of conspiracy. In no sense may it be said that his first statement was at all incriminating with respect to a conspiracy charge. Thus, there is no doubt that the second statement was against his penal interest.

An additional factor in considering the reliability of Strano's second statement is its consistency with his first. The first statement fixes the crime at a

time differing by an hour and some minutes from that recited in the second, and mentions nothing about an accomplice while the second statement does. "Inconsistency" applies to propositions which cannot both be true. That term is inappropriate to characterize propositions of differing degrees of completeness. Because it is obviously true that Strano could have committed the crime with an accomplice and still have committed the crime, the statements are not inconsistent. The second is simply more complete than the first. With respect to the alleged difference in the time of the crime indicated in Strano's two statements, a differential of less than one hour and a half, on an issue that is totally neutral and collateral, is hardly significant, especially when the time given in both statements is an estimate.

The facts of this case are distinguishable in an important respect from the facts in most of the cases which established the rules for crediting information. See *United States* v. *Harris,* supra; *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637; *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *Jones* v. *United States,* 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697; *Giordenello* v. *United States,* 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503. Here, there is no unidentified informer, but a named, available participant in the crime of which the defendant is accused. Although we do not rely solely on the fact that the informant in this case was a participant, we note that this fact has been given great weight in other jurisdictions. *United States* v. *Viggiano,* 433 F.2d 716, 717 (2d Cir.), cert. denied, 401 U.S. 938, 91 S. Ct. 934, 28 L. Ed. 2d 219; *Louie* v. *United States,* 426 F.2d 1398, 1400 (9th Cir.); *Wooton* v. *United States,* 380 F.2d

230, 232 (5th Cir.), cert. denied, 389 U.S. 942, 88 S. Ct. 302, 19 L. Ed. 2d 294; *United States ex rel. Gates v. Pate,* 355 F.2d 879, 881–82 (7th Cir.); *Thomas v. United States,* 281 F.2d 132 (8th Cir.), cert. denied, 364 U.S. 904, 81 S. Ct. 239, 5 L. Ed. 2d 196; *Commonwealth v. Lepore,* 349 Mass. 121, 207 N.E.2d 26. That the informant was a participant has been held sufficient by itself to support a warrant in some cases. *Bernard v. United States,* 360 F.2d 300, 304 (5th Cir.), cert. denied, 385 U.S. 867, 87 S. Ct. 130, 17 L. Ed. 2d 94; *United States v. Tocco,* 449 F.2d 288 (8th Cir.), cert. denied, 405 U.S. 974, 92 S. Ct. 1191, 31 L. Ed. 2d 247.

*United States v. Harris,* supra, specifically notes that a warrant is properly issued when there is a substantial basis for crediting the information which supports it. The range of facts and circumstances, or combination thereof, which may reasonably substantiate that information is not limited by any exclusive inventory. That each case must be tested on its own facts; *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441; is apparent from the variety of circumstances which have been cited as underpinning a magistrate's implicit judgment that the information with which he is supplied is sufficiently reliable to justify the issuance of a warrant. E.g., *Spinelli v. United States,* supra; *Jones v. United States,* 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697; *Draper v. United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. Where the object of a rule is to insure an independent judgment by a magistrate and there is substantial evidence that he exercised such judgment, there can be no doubt of his compliance with the rule.

An affiant need not recite the precise factors on which he judged his informant credible and reliable. *Aguilar v. Texas,* supra, requires only that the

magistrate be informed of some of these underlying circumstances. If they are apparent to the common-sense reader of the affidavit—whether by necessary implication or recital—it is enough.

There is error, the judgment is set aside and the case is remanded with direction to overrule the motion to dismiss the information.

In this opinion HOUSE, C. J., COTTER and SHAPIRO, Js., concurred.

THIM, J. (dissenting). This case is concerned with the problems encountered where the police, armed with the hearsay statement of an untested informer, attempted to obtain an arrest warrant from a magistrate who must decide whether the informant was credible or his information reliable so as to justify the warrant's issuance. The trial court, relying on *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, concluded that the implication of the defendant in the crimes charged was based solely on the uncorroboated statement of the informer, Ronald F. Strano, Jr., and that without a sworn statement showing underlying facts and circumstances attesting to Strano's credibility or the reliability of his information concerning the defendant, there was no basis for the issuance of the warrant.

Contrary to the majority opinion, I believe that under the standards enunciated by the United States Supreme Court, and which we are necessarily bound to follow, the lower court committed no error and the motion to dismiss the information was properly granted. While the majority opinion's recitation of the applicable principles of law is correct, I take issue with the way in which these principles have been applied to this case.

The only affidavit offered in support of the appli-

cation for the bench warrant rests entirely on hearsay. While hearsay may be the basis for the issuance of a bench warrant, there must be a "substanial basis for crediting the hearsay." *Jones* v. *United States*, 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697; *United States* v. *Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684. Under the *Aguilar* rule, where, as in this case, the affiant, without any personal observation of the crime, relied entirely on the informer, a two-pronged test must be satisfied before a judge may issue a bench warrant. Under the test, the affidavit in question must contain: (1) some underlying facts and circumstances from which the informant could conclude that what he alleged was so; (2) some underlying facts and circumstances from which the affiant could conclude that the informant was credible or his information reliable. *Aguilar* v. *Texas*, supra, 114; *Spinelli* v. *United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637. As the majority opinion correctly concludes, the first test was met. If entitled to credit, the affidavit contains sufficient underlying facts and circumstances to establish probable cause. Having been duly sworn, there was reason for the judge to believe that the affiant was truthful and accurately relating the informant's story.

The crux of the problem involves element (2) and the defendant's contention that the affiant cited no underlying facts and circumstances from which the affiant could conclude that Strano was credible or his information reliable. With all due deference, the issuance of the warrant in the case at bar violated the spirit of the fourth amendment, there being no adequate indicia of trustworthiness within the four corners of the affidavit to satisfy constitutional standards.

An examination of the affidavit[1] reveals, inter alia, that while he was in police custody, Strano

[1] "I, John R. Marshall, after being duly sworn, depose and say that I am of legal age, am now and have been a member of the Vernon Police Department for about the past 7 years.

1. That on June 12, 1970, your affiant was assigned by an immediate supervisor to conduct a follow up investigation of Vernon Police Complaint, C-5223-70-I-J. That said complaint originated from a Mrs. Ruth Maloney, the administrator of a convalescent hospital known as the Rockville Memorial Nursing Home, located at 22 South St., in Rockville, Connecticut.

2. That your affiant has knowledge of, as indicated in said complaint, that the Rockville Memorial Nursing Home had been broken into, and that an office safe containing in excess of $1,000.00, and a quantity of negotiable checks and jewelry had been reported stolen from the premises.

That Mrs. Maloney, in her capacity as administrator of said convalescent home, requested the person(s) responsible arrested and prosecuted.

3. That on June 30, 1970, following subsequent investigation, your affiant interviewed and obtained a written, signed, statement of one, Ronald F. Strano Jr., age 19 of 10 Allen Dr., Vernon, Connecticut. That said interview and statement was obtained following Strano being advised of, and signing a waiver of his rights. That in said statement Ronald Strano related of how on the night of June 11, 1970, at about 10:30 PM, he broke into the Rockville Memorial Nursing Home by prying open a screen and window at the office area to gain entry. That upon gaining entry Strano related of how he entered and removed the office safe which was loaded into his vehicle and driven to a wooded area to be opened. That on opening the safe, Strano removed $1,300.00 to $1,500.00 in U. S. paper currency from it.

4. That on July 2, 1970, your affiant arrested Ronald F. Strano Jr. via a Circuit Court Warrant charging him with Breaking & Entering with Criminal Intent, and larceny (in excess of $2,000.00). That as the result of said arrest, Strano was later bound over to the jurisdiction of the Tolland County Superior Court for trial.

5. That on August 6, 1970, your affiant again interviewed Ronald F. Strano Jr. That said interview was conducted in the presence of Strano attorney, and that upon the advice of said attorney Ronald Strano volunteered to make an additional statement relative to the offenses committed against the Rockville Memorial Nursing Home.

6. That following Ronald F. Strano Jr., being advised of, and

made two statements which differed in several respects, thereby raising the issue as to whether (1)

signing a waiver of his rights, your affiant obtained a second, written, signed statement in which Strano named his accomplice in the commission of his offenses against the Rockville Memorial Nursing Home on the night of June 11, 1970.

That Strano related in said statement of how he and one James Jackson, age about 26 of Vernon Garden Apartments, had in the past talked about pulling a job to get some money. That at about 9:30 PM of June 11, 1970, he, Strano, had phoned James Jackson, telling him of his plan to get the safe out of the Rockville Memorial Nursing Home. That Jackson was agreeable to this plan as he needed money to pay outstanding debts.

That Jackson a short time later drove to Stranos home, picking him up at about 9:45 PM. That together, Strano and Jackson later drove to the Rockville Memorial Nursing Home in Jacksons vehicle.

6[A]. That at about 11:55 PM of June 11, 1970, Strano related of how he gained entry into the office of the Rockville Memorial Nursing Home by way of an office window. That on gaining entry Strano passed the office safe out of the window to James Jackson. That he and Jackson after loading said safe into Jacksons car, drove to a wooded area where Strano opened the safe by use of the combination which had provided to him earlier by a girlfriend who was employed at the Rockville Memorial Nursing Home.

That on gaining entry into said safe, Strano and James Jackson removed its contents, taking only the U. S. paper currency. That said currency totaled to about $1,500.00 which they divided, each taking about $750.00.

7. That, based on and in view of the foregoing facts and information, your affiant believes that reasonable grounds and probable cause exists, and that the herein named accused, James Jackson, did, on June 11, 1970, in the Town of Vernon, Connecticut, commit the crime of Breaking and Entering With Criminal Intent, in violation of section 53-76 of the Connecticut General Statutes: and that James Jackson did further, on June 11, 1970, commit, in the Town of Vernon, Connecticut, the crime of, Larceny (over $2,000.) in violation of section 53-63 of the Conn. General Statutes.

That the credibility of the complainant, Mrs. Ruth Maloney, to the best of your affiants knowledge is good.

That no prior application has been made to the Superior Court in this case.

Application is hereby made for the issuance of a Bench Warrant for the accused, James Jackson, for the crimes named herein.

Further your affiant saith not."

the statements were inconsistent with one another and, therefore, inherently unreliable, or (2), as the majority holds, the second statement was merely an elaboration of the first. The June 30, 1970, statement indicated that the crimes were committed at about 10:30 p.m. and no reference concerning the defendant was made. By this statement, Strano, in effect, strongly implied that he alone committed the crime. In the August 6, 1970, statement, however, Strano stated that the crimes took place at about 11:55 p.m., that the defendant assisted him in their commission, and that a female employee of the nursing home supplied the combination to the safe. Both statements appear to be complete in themselves, yet they conflict as to the participants of the crime. As the defendant aptly states, the two conflicting statements lead to conjecture as to which statement of Strano was the truth so that the latter statement cannot be made the sole basis on which to issue a warrant. In *State* v. *Saidel,* 159 Conn. 96, 98, 267 A.2d 449, we held that an affidavit in an application for a warrant was not a sufficient basis for finding probable cause where it contained two conflicting statements. "Without more, the mere recitation of two conflicting statements cannot provide a sufficient basis for finding probable cause." Id., 99.

The majority claims that there are several factors present within the affidavit which, at least in combination, elevate the reliability of Strano's information to a degree sufficient to uphold the warrant's validity.

As they correctly hold, declarations against one's penal interest may be used to bolster an informant's credibility or the reliability of his information. *United States* v. *Harris,* 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723. In the *Harris* decision, the in-

former, fearing for his life, told how he had made purchases of illicit whiskey from the defendant. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their admission. Admissions of crime . . . carry their own indicia of credibility — sufficient at least to support a finding of probable cause." Id., 583. In the present case, while the August 6 statement of Strano would appear to be a declaration against interest, and the majority so holds, such is not the case. By the first statement of June 30, Strano had already implicated himself in the criminal activity involved, thereby subjecting himself to penal consequences. While the defendant concedes that the second statement would no doubt be admissible against him at trial, it made no further significant admission save a possible admission of conspiracy.

The majority further holds that the affiant's own knowledge of some of the particulars of Strano's statements reasonably supports an inference of corroboration. "[H]e [the affiant] may rely upon information received through an informant . . . so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Jones* v. *United States,* 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697; see *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. In the present case, while the police did verify some of Strano's statements, e.g., the actual occurrence of the incident, its location and the method of operation, it is convincingly clear that they did not, or were unable to, verify any of the crucial statements of Strano linking the defendant to the crime. Similarly, while corroborating information from "additional sources" as to the same facts is a substantial factor in satisfying the *Aguilar* standards, its appli-

cation is misapplied by the majority. Here, Mrs. Maloney's statement is the only "additional source" of information concerning the crime and she could only corroborate the fact that the nursing home had been broken into and the safe stolen. Mrs. Maloney did not link the defendant to the crime, but merely informed the police that a crime had been committed.

The United States Supreme Court lends great weight to information which comes from informers who have supplied law enforcement officers with correct tips in the past. See *Jones* v. *United States,* supra. Some informers, as in *Draper* v. *United States,* supra, are considered "special employees" of the police who, for a fee, give tips to the police. Having a history of past veracity, there is good reason to believe that the current information is likewise reliable. In today's opinion, the majority would erroneously attempt to apply this principle to the case at bar, allowing Strano's statement of June 30 to pass muster as a prior correct tip so as to elevate him to the status of a "past known informer" for the purpose of justifying a belief in his second statement. Such an application is improper and does an injustice to the concept as applied by the United States Supreme Court.

Nor does the fact that Strano confessed to the crimes while in custody make him any more trustworthy. *Ming* v. *Superior Court,* 13 Cal. App. 3d 206, 213, 91 Cal. Rptr. 477; *Ovalle* v. *Superior Court,* 202 Cal. App. 2d 760, 21 Cal. Rptr. 385. "To hold that the information here furnished by Oldrow [the arrestee] was sufficient to establish reasonable cause would be in effect to accord to a nonreliable informant who was in the toils of law a greater degree of reliability than is attributed to such an informant who is not thus encumbered." *People* v. *Amos,* 181

Cal. App. 2d 506, 509, 5 Cal. Rptr. 451; see *Ovalle* v. *Superior Court,* supra. Similarly, I do not believe that the presence of counsel is necessarily a deterrent to any fraud Strano may have decided to perpetrate by his statements.

In addition to there being no underlying facts or circumstances concerning Strano's credibility or the reliability of his information within the affidavit, the affidavit does not even make the bald assertion that the affiant finds the informer reliable or credible. In contrast, the affidavit does state "the credibility of the complainant, Mrs. Ruth Maloney, to the best of your affiant's knowledge is good." Likewise, there is no averment that Strano was a known informer or that he had supplied reliable information in the past. While a magistrate may also rely on the affiant's knowledge of a suspect's past criminal reputation; *United States* v. *Harris,* supra; no averment as to any past criminal reputation was included in the affiant's affidavit.

One final point warrants discussion. As the majority again correctly holds, whether the informant is credible or his information reliable is a determination to be made, not by the police, but rather, by a neutral and detached magistrate. "Otherwise, 'the inferences from the facts which lead to the complaint' would be drawn not 'by a neutral and detached magistrate,' as the constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime.' " *Aguilar* v. *Texas,* 378 U.S. 108, 114–15, 84 S. Ct. 1509, 12 L. Ed. 2d 723; see *Giordenello* v. *United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503; *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436. "[T]he court must still insist that the magistrate perform his 'neutral and detached' func-

tion and not serve merely as a rubber stamp for the police." *Aguilar* v. *Texas,* supra, 111. This duty is placed squarely on the magistrate, and it is not enough that the police find the tipster credible or his information reliable. In applying these principles to the present case, as the majority professes to do, it is convincingly clear that there are no underlying facts and circumstances in the affidavit from which a magistrate could make such an independent determination. To sustain this warrant would be to dilute "important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." *Spinelli* v. *United States,* 393 U.S. 410, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637.

In *United States* v. *Ventresca,* 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684, it was stated that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted . . . in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting the evidence to a judicial officer before acting." See *United States* v. *Harris,* supra. These sound principles have not been departed from in an analysis as to whether the affidavit was sufficient on its face. Here, unlike other cases where the affidavits have been held to be sufficient, the magistrate, as a matter of

law, had nothing before him to show that the affiant was justified in believing Strano. Nothing whatsoever was within the affidavit to link the defendant to the crime except the uncorroborated and inconsistent statements made by an untested and inherently unreliable participant in the crime and who was in the toils of justice.

In their quest to reach a desired result, the majority has failed to look beyond the bounds of this case to the future implications of such a decision. The fourth amendment directs that the citizenry of this country are to be secure against those who would make false accusations. To follow the majority today would mean that a statement by an informer, untested as to his credibility or the reliability of his information, without any independent corroboration or support to diminish the possibilities of a "prevaricating tale," would be a sufficient basis on which to issue a warrant. I cannot abide by such a decision which would so erode one of the fundamental pillars of justice—the fourth amendment.