**UNITED STATES of America,**
**Appellee,**

v.

**James Campy IRBY, Appellant.**

**No. 8485.**

United States Court of Appeals
Fourth Circuit.

Argued March 20, 1962.

Decided May 22, 1962.

A. Andrew Giangreco, Alexandria, Va., for appellant.

Plato Cacheris, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOPER, HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOPER, Circuit Judge.

James Campy Irby appeals from a judgment of the District Court rendered on October 6, 1961 whereby he was sentenced to a fine and imprisonment for violation of the Federal Narcotic Acts after he had been found guilty as charged in two counts of an indictment. The first count charged that on March 31, 1961, at the Washington National Airport, in violation of 21 U.S.C.A. § 174, Irby received, concealed and transported 11.7 ounces of heroin knowing that the drug had been imported into the United States contrary to law. The second count charged that on March 31, 1961, in violation of Section 4704(a) of the Internal Revenue Code, 26 U.S.C. § 4704(a), he had purchased, sold and distributed 11.7 ounces of heroin which was not in the original stamped package. On each count he was sentenced as a second offender to imprisonment for a period of 20 years and fined $1000, the sentences to run concurrently. Information furnished to the court pursuant to Section 7237(c) of the Internal Revenue Code, 26 U.S.C. § 7237(c) showed that the defendant, on May 16, 1946, had pleaded guilty to the violation of 21 U.S.C.A. § 174, and had been sentenced to imprisonment for the period of 15 months to 4 years and fined $10.00.

Irby was arrested on March 31, 1961 at the Washington National Airport by Federal Narcotic Agents stationed in Washington, who acted without a warrant of arrest upon information furnished them by Federal Narcotic Agents stationed in New York. He was searched and 10 packets of heroin were found upon his person. This evidence was used against him at the trial. Reversal of the judgment is sought on the ground that the evidence was obtained through an illegal arrest and search of the person without a warrant of arrest and without probable cause. Prior to the trial the defendant moved the court to suppress the evidence on this account but the motion was over-ruled. The correctness of this ruling is the subject of this appeal.

Authority to make arrests without a warrant for violation of any law of the United States relating to narcotic drugs was conferred upon the agents of the Bureau of Narcotics, of the Department of the Treasury, by the Act of July 18, 1956, Chapter 629, § 104(a), 70 Stat. 570, codified as Section 7607 of the Internal Revenue Code, 26 U.S.C. § 7607. It provides that such agents may "make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." Hence, the question for decision on this appeal is whether the District Judge was justified in finding that the agents in this case, at the time of the arrest, had reasonable grounds to believe that he had committed or was committing a violation of the narcotic statutes. The evidence presented to the Judge on this point may be summarized as follows.

The Washington agents had knowledge of Irby's prior conviction for violating the Narcotic Act in 1946, and they had had him under intermittent surveillance since 1958, and had seen him in contact with other violators of the narcotic statutes at various times, most recently within a month of the date of his arrest. In March 1961, prior to the arrest, narcotic agents stationed in New York received information about Irby from one Worthington Albert Alston who had previously sold narcotic drugs to an under cover Federal agent and had thereafter become a special employee of the Narcotics Bureau as an unpaid informer. The information related to Irby's activities in dealing with narcotics and specifically to a trip which Irby was to make from Washington to New York by air on March 31 in order to get narcotics and return with them to Washington. On March 30 the New York agents communicated with the Washington agents and told them of the planned journey and that Irby would leave the Washington airport on the morning of March 31 by plane of American Airlines due to arrive at New York at 11:48 A.M. As a result of this information the Washington agents were awaiting Irby at the airport and saw him purchase a round-trip ticket to New York on the flight predicted, under the assumed name of "C. Green", and take the plane. The time of his return could not be determined as Irby had not made a return reservation. The Washington agents then telephoned this information to the office of the narcotics agents in New York. Agents from the New York office met the plane upon its arrival at the LaGuardia Airport in New York City and followed Irby to 461 Central Park West in New York City, which was known to them as a place where many violators and suspected violators of the narcotic laws were accustomed to meet. They saw him leave the place about 2 o'clock in the afternoon but lost him and then picked him up again at about 3:30 P.M. at the Airport and saw him board a plane for Washington, D. C. They telephoned this information to the Washington agents who met the plane upon its arrival in Washington and arrested Irby and found the drugs upon his person as above set out.

Evidence of these facts was presented to the District Judge at the hearing of the motion to suppress the evidence. In addition, he was shown the record of his court in a criminal case in which Alston had been indicted in December 1960 for making a false claim against the United States. This record showed that on motions of the United States and of Alston's attorney filed in this case in January 1961 Alston was committed to the St. Elizabeth's Hospital in the District of Columbia to be examined in respect to his mental competency on the ground that he was a pathological liar and an anti-social maladjusted person who was unable to adjust himself to prevailing social standards and had been discharged from the United States Army for unfitness and had inflicted a gun shot wound upon himself with suicidal intent. A report of the superintendent of the hospital, under date of March 15, 1961, showed that after intensive study of the case by the psychiatric staff of the hospital, it was concluded that Alston was mentally competent to understand the proceedings against him and to assist properly in his own case. The record in the case also showed that when Alston was called for trial on September 11, 1961 he did not respond, and on October 19, 1961 his bail was forfeited.

It is the contention of the defendant that upon this testimony the District Judge should have granted the motion to suppress the evidence gained by the arrest on the ground that the information upon which the agents acted in making the arrest was unreliable and unworthy of belief because it was obtained solely from Alston who was known to be mentally sick as well as a pathological liar. Our examination of the testimony leads us to a different conclusion. It was known to the agents in Washington that Irby had a criminal record in the narcotic field and had been consorting with

violators of the Narcotic Acts, and hence, when they received information of his impending trip to New York, it was proper and natural that they should investigate. It was known at the same time to the New York agents that Alston had contacts with the illicit trade and had been given informal employment as a special employee or informer to assist in the enforcement of the statutes. It was reasonable and proper, therefore, that they should pass on to the Washington agents the information acquired with respect to Irby's trip and that they should cooperate in the investigation by following Irby when he arrived in the city. Moreover, it was ascertained before the arrest was made that the specific information given by Alston as to Irby's trip to New York and return was entirely accurate since Irby did go by air to New York on the very flight reported and visit a place with an unsavory reputation as a hangout for narcotic violators, and did return to Washington the same day as had been foretold. In addition, he made the trip under an assumed name. Obviously, there was not only ample ground for the judge to conclude that the agents had reasonable grounds to believe that Irby was committing a violation of the law but it is difficult to see how any other decision could have been made. It is of little moment that Alston was shown to be a man of unstable character and credibility. It is from persons of this type rather than from the law-abiding that information as to the violation of the law is likely to be obtained, and in this instance the information was tested and found to be correct in important details before the arrest was made.

The case at bar in general outline is not unlike that considered in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, where a possessor of narcotic drugs was arrested and searched without a warrant by narcotic agents when he alighted from a railroad train, as had been foretold by a special employee or informer of the Bureau of Narcotics, whose previous reports had been found to be accurate and reliable. Quoting the provision of 26 U.S.C. § 7607, which authorizes narcotic agents to make arrests without warrant if they have reasonable grounds to believe that the person to be arrested has committed or is committing a violation of the Narcotic Laws, the court pointed out that "reasonable grounds" in the statute has the same meaning as "probable cause" in the Fourth Amendment, and sustained the arrest. It held that the agents had the right to rely upon the hearsay information furnished by the informer, who had been previously found to be reliable, especially as in pursuing the information furnished in the particular instance they spied a man, who corresponded in appearance to the informer's description, alight from a train at the place the informer had foretold. Stating the rule to be applied in such cases the court said, page 313, 79 S.Ct. page 333:

> " 'In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, [338 U.S. 160] at 175 [69 S.Ct. 1302, at page 1310, 93 L. Ed. 1879]. Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]."

In the case at bar there was no explicit testimony that the information previously furnished by the special employee had proved to be accurate, but the agents had used the man previously and obviously had enough faith in him to put his lead as to Irby to the test, and since his information proved correct in essential details, its reliability was established before the arrest was made.

The additional contention is made, seemingly based on Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, that the arrest and search of Irby were illegal since the agents had ample time to secure a warrant of arrest but failed to do so. This contention cannot be sustained. Narcotic agents, as we have seen, are clothed by Section 7607 I.R.C. with general authority to make arrests without warrant upon probable cause. See Miller v. United States, 357 U.S. 301, 305, Note 4, 78 S.Ct. 1190, 2 L.Ed.2d 1332. The authority is similar to that conferred upon agents of the Federal Bureau of Investigation of the Department of Justice, and other government officers, by 18 U.S.C. §§ 3052 and 3053. The Fourth Amendment does not require arresting officers clothed with such authority to procure a warrant of arrest, even if it is practicable for them to do so, but they may act without a warrant if they have reasonable grounds to believe that a felony has been committed or is being committed.

Reliance on Trupiano is misplaced. In that case it was held that Federal agents who detected a man operating an illicit still were not justified in seizing contraband articles on the premises where the arrest was made without a search warrant which they had had ample opportunity to obtain. In the course of the opinion, however, it was said, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663, that the arrest of the operator of the still was valid and that the absence of a warrant of arrest, even though there was sufficient time to obtain one, did not destroy its validity. Subsequently, in United States v. Rabinowitz the limitation set forth in Trupiano on the right of arresting agents to seize contraband property in the course of a lawful arrest was withdrawn. It was stated, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653, that an arrest is valid even without a valid warrant if the arresting officers have reasonable grounds to believe that a felony is being committed in their presence, and it was further held that the validity of a search in connection with an arrest without a warrant is not dependent solely upon the practicability of procuring a warrant in advance. The court said, 339 U.S. 65, 70 S.Ct. 435:

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against unreasonable searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

The judgment of the District Court is affirmed.

Affirmed.

J. SPENCER BELL, Circuit Judge (concurring specially).

On the authority of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327, whose facts are indistinguishable from this case, I concur in the result.

However, I do not wish to associate myself with the unqualified statement in the opinion that officers are not required to procure a warrant, even when it is practicable for them to do so, but may arrest and search without a warrant upon reasonable grounds to believe that a felony has been committed, as well as when one is being committed in their presence. This broad statement is highly debatable and is not required for the decision of the case. Also, I would omit the discussion of the Trupiano and Rabinowitz cases, just as the Supreme Court found a discussion of them unnecessary in its opinion in Draper. Moreover, the effect of Rabinowitz on Trupiano has certainly been modified, in some circumstances, by the more recent case of Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828. I would leave the determination of the ultimate rule to await a case requiring it.